## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| SYMBION POWER HOLDINGS LLC; and<br>SYMBION POWER LLC,<br><div align="right">Petitioners,</div><br>- against -<br><br>ZOUZAR BOUKA;<br>VIMA REAL ESTATE SARL, erroneously<br>sued herein as VISION MADAGASCAR<br>REAL ESTATE SARL; and<br>VISION INDIAN OCEAN SA,<br><div align="right">Respondents.</div> | Case No. 23 Civ. 1439 |

## RESPONDENTS' NOTICE OF REMOVAL

Respondents Zouzar Bouka, VIMA Real Estate SARL (erroneously sued herein as Vision Madagascar Real Estate SARL), and Vision Indian Ocean SA, by and through their undersigned counsel, hereby remove this action from the Supreme Court of the State of New York, County of New York, where it is currently pending under Index No. 650809/2023, to the United States District Court for the Southern District of New York. This notice of removal is being filed pursuant to 28 U.S.C. § 1441(a), 9 U.S.C. §§ 202-205, and 28 U.S.C. § 1331.

## I.    INTRODUCTION

1.    This matter arises out of the criminal prosecution of Paul Hinks and Mirela Comaniciu before the Anti-Corruption Court of Madagascar (the "Pôle Anti-Corruption") for misuse of corporate assets of Symbion Power Mandroseza SARL ("SPARL"), a joint venture company incorporated in Madagascar to operate the Mandroseza Power Plant in Antananarivo, and the related proceedings pursuant to 28 U.S.C. § 1782 before Judge Abrams and Magistrate Judge Gorenstein, *In re Application of Bouka*, No. 22 Misc. 92 (RA) (GWG) (S.D.N.Y.).

2.      Having repeatedly failed to obtain dismissal of the charges against Mr. Hinks and

Ms. Comaniciu in Madagascar, and facing discovery in this Court in aid of that proceeding,

Petitioners, two companies associated with Mr. Hinks—but not Mr. Hinks himself—filed an

application in the Supreme Court of the State of New York, New York County to enjoin

Respondents from participating in those criminal proceedings and "ancillary proceedings in

support thereof"—that is, the Section 1782 application in this Court.

3.      They did so purportedly on the basis of an arbitration clause in a Shareholders'

Agreement relating to the Mandroseza Power Plant, under which Petitioners Symbion Power

Holdings LLC, Symbion Power LLC, and Respondent Vision Indian Ocean SA are *already*

participating in arbitration proceedings regarding certain of the disputes between them, –which

proceedings are governed by the Commercial Arbitration Rules of the American Arbitration

Association and administered by the International Centre for Dispute Resolution.

4.      Without mentioning that the proceedings that Petitioners sought to enjoin were

criminal in nature, Petitioners even sought a temporary restraining order on an *ex parte* basis that

would have enjoined Respondents from participating in criminal proceedings in Madagascar or

the Section 1782 discovery authorized by this Court.

5.      While the state court denied Petitioners' requested *ex parte* anti-suit temporary

restraining order, Petitioners still seek to enjoin Respondents from proceeding in both the

Malagasy criminal proceedings and in this Court.

6.      If such an order were granted, Respondents—all of whom are residents of

Madagascar—would be forced by a foreign court to refuse to cooperate with a criminal

prosecution in the country where they live.

7.      Because this case indisputably involves an international arbitration governed by the New York Convention—Respondents are all citizens of foreign countries, and Petitioners are beneficially owned by foreign citizens—this Court has original jurisdiction over it pursuant to 9 U.S.C. §§ 202, 203, and 205, and it is thus removable to this Court.

8.      Additionally or alternatively, pursuant to the doctrine of foreign affairs removal, this Court has removal jurisdiction over a state court action that seeks an anti-suit injunction against criminal proceedings in Madagascar, thus placing a court in the United States in the position of interfering with and obstructing a foreign sovereign's exercise of its sovereign functions.

## II.      BACKGROUND

### A.      Parties and Relevant Non-Parties.

9.      Petitioner Symbion Power Holdings LLC ("Symbion Holdings") is a Limited Liability Company organized under the laws of the state of Delaware with its principal place of business in New York, New York. Upon information and belief, Symbion Holdings' membership interests are ultimately owned by Paul Hinks, believed to be a citizen of South Africa and the United Kingdom who resides in New York, New York, and Richard Bethell, 6th Baron Westbury, believed to be a citizen of the United Kingdom who resides in Cyprus.

10.      Petitioner Symbion Power LLC ("Symbion Power") is a Limited Liability Company organized under the laws of the state of Delaware with its principal place of business in New York, New York. Upon information and belief, Symbion Holdings' membership interests are ultimately owned by Paul Hinks, believed to be a citizen of South Africa and the United States and the United Kingdom who resides in New York, New York, and Richard Bethell, 6th Baron Westbury, believed to be a citizen of the United Kingdom who resides in Cyprus.

11.     Non-Party Hinks is a co-founder of the Symbion group of companies, and currently a defendant in criminal proceedings in Madagascar.

12.     Non-Party Mirela Comaniciu, believed to be a citizen of Romania, is an employee of the Symbion group of companies, and currently a defendant in criminal proceedings in Madagascar.

13.     Respondent Zouzar Bouka is a citizen of France who resides in Madagascar.

14.     Respondent VIMA Real Estate SARL (erroneously sued herein as Vision Madagascar Real Estate SARL) is a limited liability company organized under the laws of the Republic of Madagascar.

15.     Respondent Vision Indian Ocean SA is a corporation organized under the Laws of the Republic of Madagascar with its principal place of business in Madagascar.

**B.     The Parties' Relationship.**

16.     As explained in detail in the parallel Section 1782 proceedings,[1] the parties invested in efforts to improper the Mandroseza Power Plant in Madagascar, pursuant to a number of agreements that contain arbitration clauses.

17.     Petitioners allege that the criminal proceedings in Madagascar and Section 1782 application must be arbitrated under Section 12.2 of the Shareholders' Agreement relating to the Mandroseza Power Plant, which states that disputes "arising from or in connection with this Agreement" shall be submitted to binding arbitration under the AAA Commercial Arbitration Rules in New York. The Shareholders' Agreement is governed by English law.

---

[1] Respondents' submissions as applicants in the Section 1782 proceedings are expressly incorporated herein by reference.

18.     An arbitration under this provision, in which Petitioners and another entity in the Symbion group of companies—Symbion Energy Holdings Ltd., a Cypriot entity—have filed claims against VIO and VIO has filed counterclaims, has been pending for approximately 3 years, with a hearing expected later this year.

19.     Certain of the Respondents are parties to *different* agreements containing arbitration clauses with Petitioners or persons associated with Petitioners, including SPARL's *Statuts* (Articles of Association), which provide for arbitration in London under the International Chamber of Commerce rules for disputes between shareholders. The *Statuts* are governed by Malagasy law.

**C.     The Criminal Proceedings in Madagascar.**

20.     As explained in detail in the parallel Section 1782 proceedings, the disputes and existing arbitration proceedings between the parties arise from Respondents' discovery of unauthorized payments from SPARL made by Mr. Hinks and Ms. Comaniciu to other Symbion entities.

21.     Mr. Bouka, on behalf of SPARL and acting as a statutory manager (gérant) of SPARL, filed a criminal complaint with the Anti-Corruption Court alleging misappropriation of assets.

22.     Pursuant to the Malagasy Code of Criminal Procedure, which is heavily inspired by French criminal procedure, SPARL thus became a "partie civile," which literally translates to "civil party," a status that confers upon a complainant the right to submit evidence in the proceeding and receive an order for restitution if the defendant is convicted.

23.     The Anti-Corruption Court found sufficient evidence to issue the equivalent of an indictment for Mr. Hinks, setting the case down for trial.

24.     On appeal, the charges against Mr. Hinks were sustained and charges against Ms. Comanciu were reinstated.

25.     A trial is thus set to occur before the Correctional Tribunal of the Anti-Corruption Court, starting imminently.

**D.     Hinks' Prior Efforts to Obstruct His Criminal Trial.**

26.     On October 28, 2022, this Court granted Respondents' application for discovery against Respondents (and certain additional affiliates) pursuant to 28 U.S.C. § 1782 in aid of the Malagasy criminal proceedings.

27.     Within days of that order, as has similarly been extensively litigated in the parallel Section 1782 proceedings, Symbion—which, pursuant to a settlement agreement with another investor in the plant, had previously engineered the sale of a majority interest in the plant to Groupe Filatex—engineered a letter on Symbion letterhead from Groupe Filatex which purported to withdraw SPARL's status as *partie civile*.

28.     VIMA, as a shareholder in SPARL, thus filed its own application for *partie civile* status to ensure that it could participate in the trial and submit evidence.

29.     On February 3, 2023, this Court denied Petitioners' motion for reconsideration of the order granting Section 1782 discovery against them in substantial part.

**E.     Petitioners Seek to Enjoin Respondents' Participation in Hinks' Trial and This Court's Section 1782 Discovery.**

30.     Despite this Court plainly having jurisdiction over an application to compel arbitration governed by the New York Convention, Petitioners chose to move to compel arbitration in New York state court (as well as, incongruously, asking the *court* to award damages for breach of contract by filing the criminal complaint).

31.     Their Petition seeks, among other things, to enjoin Respondents "to refrain from participating in any foreign or domestic proceedings within the scope of the parties' arbitration agreement, including but not limited to pursuing civil claims and seeking civil damages in the *Pôle Anti-Corruption* in Madagascar and ancillary proceedings in support thereof."

32.     Upon information and belief, the non-exclusive reference to "pursuing civil claims and seeking civil damages in the *Pôle Anti-Corruption*" is intended to convey to Respondents that they may not, under penalty of contempt, participate in or submit evidence in Mr. Hinks' criminal trial.

33.     Upon information and belief, the reference to "ancillary proceedings in support thereof" is intended to convey to Respondents that they may not take the discovery authorized by this Court under Section 1782, under penalty of contempt.

34.     To make matters worse, Petitioners sought these anti-suit injunctions against foreign criminal proceedings and to collaterally attack this Court's orders through an ex parte application for a temporary restraining order—and violated the state court's rules by failing to provide Respondents with an advance copy of their moving papers before presenting their proposed order to show cause for signature.

35.     Petitioners also failed to state in their moving papers that the proceedings sought to be enjoined were criminal in nature, calling the *criminal* complaint in the Anti-Corruption Court merely a "complaint," and referring to the proceedings as "civil claims."

36.     Similarly, Petitioners only made passing reference to the Section 1782 proceedings in this Court in their memorandum of law in support of their petition, neglecting to mention any orders of this Court in the Section 1782 proceedings.

37.     Fortunately, the state court declined to sign the portion of the proposed order to show cause seeking an *ex parte* temporary restraining order, but Petitioners continue to request on an *inter partes* basis the anti-suit injunctions against the Malagasy criminal proceedings and this Court's Section 1782 proceedings.

### III.    JURISDICTION AND VENUE

38.     This Court has federal question jurisdiction under 28 U.S.C. § 1331, because this is a civil action arising under the Constitution, laws or treaties of the United States. Specifically, the subject-matter of this proceeding relates to an arbitration agreement or award falling under the New York Convention under 9 U.S.C. § 202, 9 U.S.C. § 203, and 9 U.S.C. § 205.

39.     Additionally or alternatively, this court has federal question jurisdiction pursuant to the doctrine of foreign affairs removal because, by interfering with the sovereign acts of a foreign state, including but not limited to enjoining a party from participating in foreign criminal proceedings in the manner permitted by the foreign state's law or seeking to obtain restitution as the victim of a crime upon a criminal conviction, the action necessarily requires determinations that will directly and significantly affect American foreign relations.

40.     While this Court has federal question jurisdiction over Petitioners' claim for damages for breach of the arbitration agreement under 9 U.S.C. § 202 and 9 U.S.C. § 205 in any event because it relates to an arbitration agreement falling under the New York Convention, in the alternative, it has supplemental jurisdiction under 28 U.S.C. § 1367 because it forms part of the same case or controversy since it arises from the same purported acts that Petitioners contend violate the arbitration agreement.

41.     Venue is proper in this District pursuant to 28 U.S.C. § 1446(a) and 9 U.S.C. § 204, because the action is pending in a state court sitting in New York County, which is within this District.

IV.     **BASES FOR REMOVAL**

    A.     **This Court Has Removal Jurisdiction Because It Has Original Jurisdiction Under The New York Convention and 9 U.S.C. §§ 202, 203, and 205.**

    42.     This Court has subject-matter jurisdiction under 9 U.S.C. § 205 because the subject matter of the proceeding pending in the state court relates to an arbitration agreement falling under the New York Convention.

    43.     The arbitration agreement that Petitioners invoke falls under the New York Convention, within the meaning of 9 U.S.C. § 202, because it is commercial, relating to an investment in a power plant in Madagascar, and because it is not entirely between citizens of the United States.

    44.     None of Respondents are citizens of the United States.

    45.     Upon information and belief, none of Petitioners are U.S. citizens either: they are LLCs, so they have the citizenship of their members, believed to be (directly or indirectly) Hinks and Westbury. While Hinks resides in the United States, he is believed to be a citizen of South Africa and the United Kingdom, and Westbury is believed to be a citizen of the United Kingdom who resides in Cyprus.

    46.     Additionally, the arbitration agreement that Petitioners invoke relates to property in Madagascar—a power plant located there—and entities incorporated in Mauritius and Madagascar.

    47.     Thus—while the arbitration agreement that Petitioners invoke either does not apply to participation in criminal proceedings or is invalid as a violation of public policy to the extent that it is interpreted to prohibit participation in criminal proceedings—this action indisputably is entirely based upon an arbitration agreement falling under the New York Convention.

48.     Under 9 U.S.C. § 203, this Court thus has original jurisdiction over this action (with no amount-in-controversy requirement) and under 9 U.S.C. § 205 and 28 U.S.C. § 1441(a), it has removal jurisdiction over this action.

**B.     Additionally or Alternatively, This Court Has Foreign Affairs Jurisdiction Because A State Court Has No Power To Enjoin Foreign Criminal Proceedings.**

49.     The Petition seeks an anti-suit injunction against Respondents' participation in foreign criminal proceedings and seeks damages from Respondents for having filed a criminal complaint before the Anti-Corruption Court.

50.     An order interfering with the Republic of Madagascar's sovereign acts in prosecuting Mr. Hinks and Ms. Comanciu and by depriving Respondents of their right under Malagasy criminal procedure to submit evidence against Mr. Hinks and Ms. Comanciu and otherwise to participate in criminal proceedings and to seek restitution as crime victims would "necessarily require determinations that will directly and significantly affect American foreign relations," and thus arises under federal common law. *Republic of Philippines v. Marcos*, 806 F.2d 344, 352 (2d Cir. 1986).

51.     Criminal prosecution is a core sovereign function of the Republic of Madagascar, and the Republic is entitled to design its criminal justice system in such a way that crime victims have a substantial role to play in obtaining and presenting evidence and in awarding restitution to crime victims as part of a criminal judgment.

52.     Madagascar, like many jurisdictions influenced by French procedure, has determined that the "civil party" system of restitution for crimes and participation in the prosecution encourages private parties to present evidence of crimes to the state, and thus reduces the demands on state resources, and ensures that judges in Madagascar's inquisitorial

system of criminal procedure have fuller access to the evidence even if the state neglects to present it.

53.     Similarly, a determination that an arbitration agreement renders wrongful filing a criminal complaint under Malagasy law would significantly impair the Republic's ability to enforce its criminal laws.

54.     Because the state court action seeks to enjoin Respondents from participating in Madagascar's system of prosecuting crimes, it directly and significantly affects foreign relations by interfering with a sovereign state's criminal procedure.

55.     Accordingly, this Court has removal jurisdiction because the action arises under the federal common law of foreign relations.

56.     Petitioners' action on its face seeks an anti-suit injunction from a state court prohibiting Respondents from participating in, among other things, "domestic" "ancillary proceedings"—a clear reference to the Section 1782 proceedings that this Court adjudicated.

57.     Thus—despite this Court's issuance of an order determining that Respondents are entitled to discovery under Section 1782—Petitioners seek a state court order that would enjoin Respondents from taking precisely the discovery that this Court authorized.

58.     Petitioners' collateral attack on the Section 1782 orders is improper. If they believed an arbitration agreement barred the proceedings for which Section 1782 relief was sought, they could have and should have raised that argument in the Section 1782 action.

**C.     The Breach of Contract Claim Also Arises Under Federal Law, Or Else Is Within this Court's Supplemental Jurisdiction.**

59.     The claim for damages for purportedly breaching the arbitration agreement by filing the criminal complaint similarly relates to an arbitration agreement falling under the New

York Convention and thus is removable under 9 U.S.C. §§ 202, 203, and 205. A claim of breach of an arbitration agreement plainly relates to that arbitration agreement.

60.     Likewise, because the action seeks damages for filing a criminal complaint—while the criminal proceedings remain pending—it directly and substantially interferes with Madagascar's sovereignty over its criminal justice system, so foreign affairs removal is also proper for this claim. Under Petitioners' theory, they are entitled to damages even if the prosecution is *successful* and the complaint is *true*—again placing this action on a collision course with Madagascar's ability to enforce its own laws.

61.     In any event, because the breach-of-arbitration-clause claim arises from the same common nucleus of operative facts as the petitions to compel arbitration.

**D.     The Procedural Requirements for Removal Are Satisfied.**

62.     Petitioners sent counsel for Respondents a link to the state court docket on February 14, 2023, and the state court docket indicates that the action was commenced on February 10, 2023. Thus, by any measure, removal is timely under 28 U.S.C. § 1446(b)(1).

63.     All Respondents join this removal.

64.     Copies of all papers in the state court action are being filed herewith, except that two documents that are subject to interim sealing orders in the state court will be filed with a motion to temporarily seal.

65.     Promptly after filing of this Notice of Removal, Respondents will serve Petitioners and the state court with copies of this Notice of Removal.

66.     By filing this Notice of Removal, Respondents do not waive any defense that may be available to them and reserve all such defenses, including but not limited to those related to service of process and lack of personal jurisdiction.

V.     **CONCLUSION**

WHEREFORE Respondents give notice that the proceeding bearing New York County

Index Number 650809/2023, pending in the Supreme Court of the State of New York, New York

County, is hereby removed to the United States District Court for the Southern District of New

York.

Dated: February 21, 2023                Respectfully submitted,

                                         /s/ Robert W. Mockler
                                         Robert W. Mockler
                                         rmockler@steptoe.com
                                         Joseph M. Sanderson
                                         josanderson@steptoe.com
                                         Lillian Khoury
                                         lkhoury@steptoe.com
                                         STEPTOE & JOHNSON LLP
                                         1114 Avenue of the Americas
                                         New York, New York 10036-7703
                                         Telephone:     212 506 3900
                                         Facsimile:     212 506 3950