SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: COMMERCIAL DIVISION

---

SYMBION POWER HOLDINGS LLC
and SYMBION POWER LLC,

                          Petitioners,

v.

ZOUZAR BOUKA,
VISION MADAGASCAR REAL
ESTATE S.A.R.L., and
VISION INDIAN OCEAN SA,

                          Respondents.

Index No._____

**Verified Petition to Compel Arbitration**

---

Petitioners, Symbion Power Holdings LLC and Symbion Power LLC, by and through their attorneys, Whiteford, Taylor & Preston LLP, by way of Verified Petition against Respondents Zouzar Bouka, VIMA Real Estate S.A.R.L., and Vision Indian Ocean SA, brings this special proceeding, pursuant to Article 4 of the Civil Practice Law and Rules (C.P.L.R.), for an order, pursuant to C.P.L.R. § 7503(a), (a) directing Respondents to arbitrate all claims against Petitioners within the scope of the parties' arbitration agreement; (b) directing Respondents, their directors, officers and agents, including Mr. Bouka, to refrain from participating in any foreign or domestic proceedings within the scope of the parties' arbitration agreement, including but not limited to pursuing civil claims and seeking civil damages in the *Pôle Anti-Corruption* in Madagascar and ancillary proceedings in support thereof; (c) awarding Petitioners the disbursements and costs of this proceeding, including reasonable attorney's fees; and (d) granting such other and further relief as is just and proper and alleges as follows:

## THE PARTIES

1. Petitioner Symbion Power Holdings LLC ("Symbion Holdings") is a limited liability company duly organized under the laws of the state of Delaware with its registered office at 2711 Centreville Rd, Suite 400, Wilmington, DE 19808 and its principal place of business at 405 Lexington Avenue, 26th Floor, New York, NY 10174.

2. Petitioner Symbion Power LLC ("Symbion Power") is a limited liability company duly organized under the laws of the state of Delaware with its registered office at 2711 Centreville Rd, Suite 400, Wilmington, DE 19808 and its principal place of business at 405 Lexington Avenue, 26th Floor, New York, NY 10174.

3. Petitioners and affiliated companies own, develop, and operate power plants with a particular focus on Sub-Saharan Africa. As will be explained below, the petition at bar arises out of the parties' involvement, along with other non-parties to this petition, with a project to rehabilitate the Mandroseza Power Plant (the "Symbion Mandroseza Project" or "Project") in Antananarivo, Madagascar.

4. Upon information and belief, Respondent Zouzar Bouka is a citizen of France and a resident of Madagascar.

5. Upon information and belief, Respondent Vision Madagascar Real Estate S.A.R.L. ("VIMA"), is a foreign corporation organized under the laws of the country Madagascar.

6. Upon information and belief, Respondent Vision Indian Ocean SA ("VIO") is a foreign corporation organized under the laws of the country of Madagascar.

7. Upon information and belief, Mr. Bouka controls and is the principal of VIMA.

8. Upon information and belief, Mr. Bouka controls and is the principal of VIO.

2

## JURISDICTION AND VENUE

9. This Court has jurisdiction pursuant to C.P.L.R. § 7501 because Article 12 of the Symbion Mandroseza Mauritius Limited Shareholders' Agreement executed on November 8, 2016 (the "Shareholders' Agreement") between the parties and their predecessors in interest requires binding arbitration in New York for any dispute arising from or in connection with the Shareholders' Agreement, including any question regarding its existence, validity, or termination. A true and correct copy of the Shareholders' Agreement is attached hereto as **Exhibit "A"**.

10. Personal jurisdiction exists over Respondents because Respondents agreed in the Shareholders' Agreement to arbitration in New York. *See* Ex. A, ¶ 12.2; *see also, Zurich Ins. Co. v R. Elec., Inc.*, 5 AD3d 338, 773 NYS2d 560 (1st Dept. 2004) ("Because the arbitration clause, which selects New York as the place of arbitration, is valid, New York has personal jurisdiction over Respondents, and is a convenient forum as a matter of law."); *Matter of Liberty Country Wear, Inc. (Riordan Fabrics Co., Inc.)*, 197 Misc. 581, 585, 96 N.Y.S.2d 134, 138 (Sup. Ct. N.Y. Cnty. 1950) ("[J]urisdiction springs from the voluntary act of the non-resident himself who by written contract has obligated himself to arbitrate a controversy in this state.").

11. Venue is proper in this County pursuant to C.P.L.R. § 7502(a)(i) because the arbitration between the parties in which the order to compel is sought is currently pending in New York county[1]. Venue is proper in the Commercial Division pursuant to Section 202.70(b)(12) of the Rules of the Commercial Division of the Supreme Court and the monetary threshold at stake in this matter exceeds U.S.$500,000.00.

---

[1] ICDR Case No.: 01-20-0000-4822

## FACTS COMMON TO ALL CAUSES OF ACTION

12. Paul Hinks is the Chief Executive Officer of both Symbion Power Holdings LLC and Symbion Power LLC, Petitioners in the within action (collectively "Petitioners" or "Symbion Power").

13. Petitioners along with Symbion Energy Holdings Ltd. ("Symbion Energy") on the one hand, and Respondent VIO on the other hand, are presently parties to International Centre for Dispute Resolution ("ICDR") Case No.: 01-20-0000-4822 taking place in New York County in the State of New York.

14. The Symbion Mandroseza Project began in early 2014, when the newly-elected President of Madagascar, Hery Rajaonarimampianina, and other government officials made an official visit to the United States seeking foreign investment in the country's energy sector, during which time, Mr. Hinks met President Rajaonarimampianina.

15. Mr. Hinks met Respondent Mr. Bouka at the 2014 African Leaders Summit in Washington, DC.

16. When Mr. Hinks and Mr. Bouka met in 2014, Mr. Bouka expressed interest in working together to pursue power projects in Madagascar.

17. Discussion between Mr. Hinks and Mr. Bouka in 2014 and 2015 led to a signed cooperation agreement between Symbion Power and VIMA.

18. On or about July 29, 2015, Symbion Power Mandroseza S.A.R.L. ("SPARL") secured a 20-year Power Purchase Agreement with Jirama, the Malagasy state-owned electric utility company.

4

19. Jirama and SPARL also entered into a Production Concession Agreement ("Concession Agreement") dated October 9, 2015 to further govern the details of SPARL's control and operation of the Symbion Mandroseza Project.

20. In a series of events between October 2015 – November 2016, Symbion secured a financing deal with non-party Alpha Innovations Management Ltd., a British Virgin Islands company ("Alpha") to finance the Symbion Mandroseza Project.

21. Symbion Power and Alpha negotiated various Memoranda of Understanding (MoUs) surrounding the terms governing Alpha's financing of the project. The MoUs contained numerous conditions governing Alpha's investment in the project.

22. On November 8, 2016, Symbion Power Holdings LLC, R.W. Chelsea Holdings Ltd., Alpha and Respondent VIMA, along with their respective principals, including Respondent Mr. Bouka, entered into the Shareholders' Agreement. *See* Ex. A, ¶¶ 1-3.

23. VIMA and Mr. Bouka were original parties to the Shareholders' Agreement. *Id.*, ¶ 3.

24. The Shareholders' Agreement concerned the ownership and operation of the Mandroseza Power Plant in Antananarivo, Madagascar through the Malagasy operating company SPARL and its holding company Symbion Mandroseza Mauritius Limited ("SMML") incorporated in Mauritius. *Id.*, ¶¶ 1.1(2) – 1.1(3).

25. The Shareholders' Agreement was amended on multiple occasions.

26. The Shareholders' Agreement was first amended on or about August 30, 2017 by Addendum No. 1 to Shareholders' Agreement ("Addendum 1"). A true and correct copy of the Addendum 1 is attached hereto as **Exhibit "B"**.

27. Addendum 1 added Symbion Energy as a party to the Shareholders' Agreement.

28. Symbion Energy is controlled by Lord Richard Westbury ("Lord Westbury"), a citizen of the United Kingdom.

29. The Shareholders' Agreement was amended on or about March 23, 2018 by Addendum No. 2 to Shareholders' Agreement ("Addendum 2"). A true and correct copy of the Addendum 2 is attached hereto as **Exhibit "C"**.

30. Pursuant to Addendum 2, VIMA and Mr. Bouka wished to be replaced by VIO as party to the Shareholders' Agreement and the existing parties to the Shareholders' Agreement acceded thereto.

31. Pursuant to Addendum 2, VIO assumed and agreed "to be bound by, and to perform and comply with, every obligation of VIMA, under the [Shareholders'] Agreement…" effective March 23, 2018. *See* Ex. C, ¶ 2.1.

32. Under the Shareholders' Agreement, as amended, VIO is "represented by Zouzar Bouka…[.]" *Id.*, ¶ 2.1(3).

33. Under Addendum 2, all other terms and conditions of the Shareholders' Agreement remained unchanged. *Id.*, ¶ 3.2.

34. The Shareholders' Agreement was amended on or about April 20, 2018 by Addendum No. 3 to Shareholders' Agreement ("Addendum 3"). A true and correct copy of the Addendum 3 is attached hereto as **Exhibit "D"**.

35. Addendum 3 clarified and stipulated certain terms surrounding payment of a success fee to VIO under the Shareholders' Agreement as amended. All other terms and conditions of the Shareholders' Agreement remained unchanged. *See* Ex. D, ¶ 3.2.

36. As such, the relationship between the parties to this proceeding is governed by the Shareholders' Agreement, executed on or about November 8, 2016 and as subsequently amended.

37. Article 12 of the Shareholders' Agreement contains a broad arbitration provision stating:

> Section 12.1 In the event that any dispute arises between the Parties regarding the application or interpretation of any provision of this Agreement, the aggrieved Party shall promptly notify the other Party of the dispute in writing. If the Parties fail to resolve the dispute within 7 business days, each Party shall have the right to pursue the resolution of such dispute in accordance with the provisions set forth below.
>
> Section 12.2 Any dispute arising from or in connection with this Agreement, including any question regarding its existence, validity, or termination, shall be first attempted to be resolved by amicable negotiation by the Parties hereto. If the dispute cannot be resolved within sixty days from such attempt, it shall be submitted to a binding arbitration proceeding to be conducted under the auspices of the Commercial Arbitration Rules of the American Arbitration Association in New York City, New York, USA, for arbitration which shall be conducted in English. The place of the arbitration shall be New York City, New York, USA. The number of arbitrators shall be one, unless otherwise agreed between the Parties hereto. The award of such arbitration is final and binding upon the Parties hereto.

Ex. A, ¶ 12.1 – 12.2.

38. Upon information and belief, Mr. Bouka, on behalf of Respondents, received, reviewed, and executed the Shareholders' Agreement, Addendum 1, Addendum 2, and Addendum 3.

39. Thus, all disputes related to the Shareholders' Agreement must be arbitrated according to the terms of Article 12 of the Shareholders' Agreement.

40. Alpha is a party to the Shareholders' Agreement. *See* Ex. A, ¶ 1.

41. Alpha's principals are Alexander Oppenhiem, an Israeli citizen, Eytan Stibbe, an Israeli citizen, and Haim Taib, an Israeli citizen. *Id.*

7

42. On or around August 30, 2017, Alpha stated that ESAH Mandroseza Ltd., a company registered under the laws of Cyprus ("ESAH"), would be replacing Alpha as a shareholder in SMML.

43. Upon information and belief, Alpha's shares in SMML were transferred to ESAH on November 9, 2017.

44. Throughout 2019, Petitioners, through Mr. Hinks, repeatedly notified Alpha and Respondents in writing of continuing disputes among the parties to the Shareholders' Agreement in an effort to resolve them amicably.

45. In approximately November 2019, the continuing dispute among the parties to the Shareholders' Agreement, to include Petitioners and Respondents, reached a point where the dispute could not be resolved amicably within 60 days.

46. The dispute included, *inter alia*, breach of contract, breach of an oral agreement, fraud, tortious interference, and defamation by Respondents and other parties to the Shareholders' Agreement.

47. On or about December 9, 2019, Mr. Hinks sent a letter to the principals of Alpha explaining Symbion Power's position and inviting discussion of the issue.

48. No reply was received to Mr. Hinks' December 9th letter and no meaningful discussion resulted despite efforts by Symbion Power to address numerous issues of disagreement.

49. Following a contentious meeting between Symbion Power representatives and Alpha representatives on January 27, 2020 in an effort to resolve the disputes between the parties to the Shareholders' Agreement, Mr. Hinks sent an email to Mr. Oppenheim, copying Mr. Stibbe and Lord Westbury, notifying Alpha's principals of the impossibility of resolving all issues between the parties to the Shareholders' Agreement, further notifying Alpha's principals of Mr.

Hinks' intention to proceed to arbitration in New York. A true and correct copy of the Mr. Hinks' January 27, 2020 email to Mr. Oppenheim ("Notification of Intent to Arbitrate") is attached hereto as **Exhibit "E"**.

50. On or about February 10, 2020, Symbion Energy submitted a Demand for Arbitration and Statement of Claim ("Demand for Arbitration") against Alpha in New York County, New York under the auspices of the Commercial Arbitration Rules of the American Arbitration Association. A true and correct copy of the Demand for Arbitration is attached hereto as **Exhibit "F"**.

51. At the time of the filing of the Demand for Arbitration, the claims therein were not time barred.

52. At all times relevant herein, Petitioners were and have been in full compliance with Article 12 of the Shareholders' Agreement.

53. On or about May 7, 2020, Symbion Energy submitted an Amended Demand for Arbitration and Statement of Claim ("Amended Demand for Arbitration"), *inter alia*, seeking relief against ESAH and VIO, thereby making Respondent VIO a party to the ICDR Arbitration.

54. In their Answering Statement and Amended Counterclaims ("Answering Statement") dated May 29, 2020, Alpha and ESAH asserted counterclaims against Symbion Energy, as well as against Petitioners herein, Symbion Holdings and Symbion Power, thereby making Petitioners parties to the arbitration.

55. As of January 18, 2022, Alpha and ESAH were dismissed as parties to the arbitration pursuant to ICDR Case No.: 01-20-0000-4822, Procedural Order No. 10 ("Procedural Order No. 10"). A true and correct copy of Procedural Order No. 10 is attached hereto as **Exhibit "G"**.

9

56. The dismissal of Alpha and ESAH from the arbitration was the result of a settlement reached between Symbion Energy and Petitioners (collectively, the "Symbion Group") on the one hand, and Alpha and ESAH on the other hand, whereby the Symbion Group and Alpha/ESAH withdrew all claims against one another with prejudice. *See* Ex. I, ¶¶ 95, 99, 102(b), and 102(c).

57. Following issuance of Procedural Order No. 10, VIO remained as the sole respondent in the arbitration and continues as such at present.

58. Despite these ongoing arbitration proceedings, Mr. Bouka, first through SPARL and now through VIMA, has pursued civil claims and sought civil remedies in a foreign proceeding in Madagascar as further detailed below.

59. On or about March 3, 2020, Mr. Bouka, purporting to be acting on behalf of SPARL, filed a complaint against Mr. Hinks, SPARL *gérant* Mirela Comaniciu and two other Symbion Group employees in the *Pôle Anti-Corruption* ("PAC"), or so-called Anti-Corruption Court in Madagascar.

60. Mr. Bouka's accusation against Mr. Hinks and other Symbion Group employees in the PAC came mere weeks after Alpha and VIO unlawfully took over operation of the Mandroseza Power Plant from the Symbion Group and Symbion Energy's Demand for Arbitration.

61. In making these accusations, Mr. Bouka was also acting in his capacity as the principal of VIO and VIMA.

62. The issues complained of by Mr. Bouka in the PAC are the same as those pending in the ICDR Arbitration. These issues include matters currently in dispute in the arbitration such as the transfer of funds to Symbion Power and its entitlement to receive such payments, and transfers from Symbion Group to Mr. Bouka / VIMA.

10

63. Mr. Bouka himself has signed a letter dated October 5, 2021 to the PAC Prosecutor withdrawing the complaint ("Bouka Withdrawal Letter") and stating that the withdrawal is final as part of the terms of settlement of another dispute with individuals that are related to the Petitioners. A true and correct copy of the Bouka Withdrawal Letter is attached hereto as **Exhibit "H"**.

64. Although Mr. Bouka purported to commence the PAC complaint on behalf of SPARL, the company itself has since denounced this complaint and requested the PAC to discontinue the proceeding through a letter dated October 31, 2022 ("SPARL Letter to PAC"). A true and correct copy of the SPARL Letter to PAC is attached hereto as **Exhibit "I"**.

65. Nevertheless, Mr. Bouka, through VIMA, now continues to pursue a parallel civil recovery in the PAC in flagrant violation of the arbitration clause in Article 12 of the Shareholders' Agreement.

66. Upon information and belief, on or about December 1, 2022, the PAC court convened a proceeding without notice to Petitioners during which Mr. Bouka appeared on behalf of VIMA, pursuing civil claims and civil damages in the PAC against Petitioners as well as other Symbion corporate entities and employees.

67. Malagasy counsel for Mr. Hinks was not provided advance notice of the December 1, 2022 PAC proceeding.

68. At the December 1, 2022 PAC proceeding, the PAC Court postponed the hearing of the PAC charges to March 9, 2023.

69. As of February 2023, Respondent VIMA, through its principal Mr. Bouka, has made civil claims seeking civil monetary damages against the principals of Petitioners in the PAC proceeding.

70. Respondent VIMA, through its principal Mr. Bouka, intends to participate as a civil party seeking civil damages in the PAC proceeding scheduled to take place on March 9, 2023.

## COUNT ONE
### (Breach of Contract)
### (All Respondents)

71. Petitioners repeat and restate the allegations contained in the prior paragraphs of this petition as if set forth more fully herein.

72. The Shareholders' Agreement, as amended, constitutes a valid contract between Petitioners and Respondents.

73. The Shareholders' Agreement contains a written agreement to arbitrate for the purposes of C.P.L.R. § 7501.

74. The Shareholders' Agreement, as amended, contains a binding and valid arbitration clause requiring the arbitration of any dispute arising from or in connection with the Shareholders' Agreement, including any question regarding its existence, validity, or termination. *See* Ex. A, ¶ 12.2.

75. Petitioners have complied with the provisions of the arbitration clause contained in Article 12 of the Shareholders' Agreement.

76. Respondent Bouka initiated a foreign judicial proceeding in Madagascar in the PAC in which Mr. Zouka made accusations against, *inter alia*, Mr. Hinks in his capacity as Chief Executive Officer of Petitioners related to, *inter alia*, misuse of corporate funds subject to the Shareholders' Agreement.

77. As of February 2023, VIMA continues to advance civil claims seeking civil monetary damages in the PAC proceeding based on the same facts and disputes currently pending in the ICDR Arbitration.

78. Respondent Bouka's actions through Respondent VIMA in the PAC proceeding are based on the same facts and circumstances subject to the ICDR Arbitration currently pending in New York and therefore constitute a flagrant breach of the valid and binding arbitration clause agreed to by the parties in Article 12 of the Shareholders' Agreement.

79. As a result of the actions of VIMA and VIO through its principal and agent Mr. Bouka, Petitioners have suffered and continue to suffer damages; to wit (a) unwarranted damage to the business reputation of Petitioners, Mr. Hinks, and employees of Petitioners; (b) necessitating Petitioners to obtain legal counsel in Madagascar and to incur unwarranted and unnecessary attorney's fees in Madagascar; and (c) unwarranted and unnecessary attorney's fees to address the PAC proceeding in the pending arbitration and in ancillary proceedings.

**WHEREFORE,** by reason of the foregoing, petitioners Symbion Power Holdings LLC and Symbion Power LLC hereby respectfully requests that this Court enter an Order:

(a) Directing Respondents to arbitrate all claims against Petitioners within the scope of the parties' arbitration agreement;

(b) Directing Respondents, their directors, officers and agents, including Mr. Bouka, to refrain from participating in any foreign or domestic proceedings within the scope of the parties' arbitration agreement, including but not limited to pursuing civil claims and seeking civil damages in the *Pôle Anti-Corruption* in Madagascar and ancillary proceedings in support thereof;

(c) Awarding Petitioners the disbursements and costs of this proceeding, including reasonable attorney's fees; and

(d) Granting such other and further relief as is just and proper.

Dated: Washington, DC

  February ___, 2023

              Whiteford, Taylor & Preston LLP

              Christopher M. Chaisson, Esq.
              444 Madison Avenue, 4th Floor
              New York, NY 10022
              Tel: (914) 580-9173
              Email: cchaisson@wtplaw.com
              *Attorney for Petitioners*

# VERIFICATION

STATE OF NEW YORK  )
                   ) ss.:
COUNTY OF NEW YORK )

I, Paul Hinks, being duly sworn, depose and say:

1. I am the Chief Executive Officer of both Symbion Power Holdings LLC and Symbion Power LLC, Petitioners in the within action.

2. I have reviewed the contents of this petition and verify that the statements contained herein are true to the best of my knowledge, except as to as alleged on information and belief, and as to those matters, I believe them to be true.

3. I am aware that if any of the statements contained in the petition are willfully false, I am subject to punishment.

_____
Paul hinks (Feb 10, 2023 23:52 GMT+3)
Paul Hinks

Sworn to before me this
10th of February, 2023

_____
Notary Public

DYMOND WELLS
Digitally signed by DYMOND WELLS
Date: 2023.02.10 16:08:07 -05'00'

DYMOND V. WELLS
NOTARY PUBLIC-STATE OF NEW YORK
No. 01WE6390652
Qualified in New York County
My Commission Expires 04-22-2023

15