# EXHIBIT G

**INTERNATIONAL CENTRE FOR DISPUTE RESOLUTION ("ICDR")**
**INTERNATIONAL ARBITRATION TRIBUNAL**

BETWEEN:

**SYMBION ENERGY HOLDINGS LTD. (CYPRUS)**
**SYMBION POWER HOLDINGS LLC**
**SYMBION POWER LLC**

AND:

**ALPHA INNOVATIONS MANAGEMENT, LTD. (BVI), ESAH MANDROSEZA LTD. (CYPRUS),**
**AND VISION INDIAN OCEAN (V.I.O.) SA (MADAGASCAR)**

**ICDR CASE NO.: 01-20-0000-4822**

---

# PROCEDURAL ORDER NO. 10 (PO#10)
## PARTIAL SETTLEMENT OF CLAIMS 3 DECEMBER 2021
## & RELATED APPLICATIONS BY VIO
### 18 JANUARY 2022

---

FILED: NEW YORK COUNTY CLERK 02/10/2023 05:38 PM
NYSCEF DOC. NO. 8
Case 1:23-cv-01439-VEC   Document 10-1   Filed 02/27/23   Page 3 of 27

### I.  Procedural Background & Summary of Submissions

1.  Additional steps relevant to the procedural background of this Procedural Order No. 10 are set out in Procedural Order No. 8, issued on 23 November 2021, and incorporated by reference.

2.  On 3 November 2021, Claimants and Respondents Alpha/ESAH ("Alpha/ESAH") jointly requested from the Arbitrator a suspension of the obligations owed to each other in the arbitration proceedings pending finalization of their agreement to settle their claims against one another through the following message:

    *We write on behalf of the Alpha/ESAH and the Symbion parties. The Alpha/ESAH and Symbion parties have reached an agreement that resolves all of their mutual claims against one another in this arbitration. The Alpha/ESAH parties and the Symbion parties therefore request that you pause any and all obligations that the Alpha/ESAH parties and Symbion parties owe one another in respect of this arbitration, including the depositions of Messrs. Stibbe and Hinks. By the end of November, the Alpha/ESAH and Symbion parties anticipate dismissing all claims against one another with prejudice, and will write to inform you when they do.*

    *Counsel for the Alpha/ESAH parties will write separately to confirm their agreement to this request.*

    *The Symbion parties also hereby state their intent that, if and when all claims between and amongst the Symbion parties and Alpha/ESAH are settled, Symbion will exercise its right to a deposition to call Mr. Bouka, the principal of the remaining Respondent, to be deposed in Mr. Stibbe's stead.*

    (the "Suspension Request")

3.  Also on 3 November 2021, counsel for Alpha/ESAH wrote to confirm their agreement with the Suspension Request. Notification of the settlement was provided to VIO by copy of that request.

4.  As set out in detail in Procedural Order No. 8, the Suspension Request led to a series of submissions regarding the effect of the Partial Settlement on the remaining claims in the arbitration and the fairness of the proceedings going forward. VIO expressed concern regarding the following issues arising out of the Suspension Request, which it said affected the integrity of the arbitration proceedings:

    a.  It was uncertain as to who would remain a party to the proceedings after the settlement;

    b.  It was unclear what the post-settlement structure of the joint venture would be and in which capacity the parties would continue to act and this information was necessary to prepare and advance its claims adequately and to assess "the creditworthiness of the counterparties which it confronts in these proceedings".

Case 1:23-cv-01439-VEC   Document 10-1   Filed 02/27/23   Page 4 of 27

ICDR Case No. 01-20-0000-4822
Procedural Order No. 10
Page 3

VIO asserted that "if there is any share transfer, or there is an ultimate dissolution of the partnership, that will require VIO to modify its claims, including because its first articulation of the case was based on the testimony of a party which is apparently withdrawing from the arbitration."

    c.   In the event that the settlement was "to evince liability maintained in these proceedings", it reserved all rights in this regard; and

    d.   The briefing and hearing deadlines were fast approaching.

5.    VIO asserted that the Arbitrator's intervention was required to protect:

    a.   VIO's right to be heard as a party;

    b.   The integrity of the arbitration proceedings against questionable transactions between the Parties; and

    c.   The conservation of property to ensure the enforceability of any prospective arbitral award.

6.    On 14 November 2021, Alpha/ESAH confirmed that once the settlement was finalized "all claims by and against Alpha/ESAH will have been dismissed with prejudice" and that "the Alpha/ESAH parties will no longer be parties to this arbitration in any capacity."

7.    As was noted in Procedural Order No. 8, any potential impact on the remaining claims in the arbitration and the fairness of the proceedings going forward depends in part on the extent to which the settlement agreement affects the underlying positions of the parties as reflected in the pleadings. VIO sought "information about the planned structure after the intended implementation of the deal at the end of November", which was refused by the settling parties. Ultimately, the Arbitrator decided that further information would not be ordered to be provided at that time without prejudice to a possible future application if appropriate circumstances existed, as VIO had not established that the information was material and necessary to its claims.

8.    On 1 December 2021, the Arbitrator wrote to the parties noting that the period of suspension as between the settling parties pending confirmation of settlement had elapsed and to request an update from the settling parties as to the status of their agreement.

9.    On 2 December 2021, VIO wrote to suggest that it provide its comments on the procedure in light of the partial suspension after the settling parties had confirmed the status of their agreement.

10.   On 2 December 2021, the Arbitrator directed the settling parties to provide an update as

ICDR Case No. 01-20-0000-4822
Procedural Order No. 10
Page 4

to the status of their agreement, in particular as it related to the procedural obligations in the arbitration.

11.     On 2 December 2021, in response to a request for clarification from Claimants' counsel, the Arbitrator provided the following explanation as to the update sought as to the procedural obligations:

> The notified settlement agreement does not settle all of the claims in the arbitration. The arbitration proceedings have not been suspended. The Counter Memorials are due on 20 December 2021, i.e. less than three weeks from today. I understand from Claimants' correspondence that they do not consider discovery to yet be complete.
>
> It is necessary to know (1) how many/which parties will participate in the arbitration going forward (the status of the settlement agreement) and (2) what the effect of that status will be on the proceedings going forward. Claimants, as the continuing party in the proceedings, should be able to advise their position on these issues at this stage and are invited to do so. If Respondents Alpha/ESAH are to remain in the proceedings, their position on procedure going forward is also invited.
>
> Once those views have been received, Respondent VIO will be invited to provide its comments.

12.     On 3 December 2021, Claimants' counsel wrote to advise that the closing date for the settlement had been slightly extended but that "the settlement is finalized as of today's date." Claimants continued the update as follows:

> Accordingly, as of today's date, Claimants and Alpha/ESAH withdraw with prejudice their claims as against each other, and Alpha/ESAH will have no further part in these proceedings. With the withdrawal of their claims and close of their participation in these proceedings, Alpha/ESAH likewise withdraw their witness statements.
>
> Claimants maintain their claims in this arbitration against VIO.

Claimants went on to list their view of the procedural next steps between Claimants and VIO in light of the finalized settlement.

13.     Also on 3 December 2021, Alpha/ESAH wrote to confirm the accuracy of Claimants' update as it relates to Alpha/ESAH and the closing of the settlement with Claimants.

14.     Also on 3 December 2021, the Arbitrator acknowledged receipt of the messages regarding the closing of the settlement and withdrawal of the claims and counterclaims with prejudice and invited VIO to provide its comments in response to Claimants' message of that date.

FILED: NEW YORK COUNTY CLERK 02/10/2023 05:38 PM INDEX NO. 650809/2023
NYSCEF DOC. NO. 8 Case 1:23-cv-01439-VEC Document 10-1 Filed 02/27/23 Page 6 of 27 RECEIVED NYSCEF: 02/10/2023

ICDR Case No. 01-20-0000-4822
Procedural Order No. 10
Page 5

15. On 6 & 7 December 2021, VIO commented upon the notification of the finalized Partial Settlement and made a number of requests arising out of that notification:

    a. A request for "disclosure of the legal effect of the [Settlement Agreement] as regards all the issues which exist in this arbitration" subject to appropriate redactions under New York procedural law.

        i. Arguing that the finalization of the settlement vitiates arguments justifying its confidentiality to protect negotiations;

        ii. Arguing that it was necessary for VIO to know who owned the shares after the settlement so that the proper parties (those in possession of the shares) would be bound by an award requiring transfer of the shares;

        iii. Arguing that if the settlement results in one shareholder and section 13.7 of the Shareholders' Agreement is triggered (termination), that will prejudice VIO and that this situation would also give rise to claims by VIO under the terms of the JV Agreement;

        (the "Request for Disclosure of the Settlement Agreement")

    b. Requesting that any dismissal order be conditioned on Claimants and Alpha/ESAH making disclosure of the following information:

        i. Whether ESAH will retain their 8,400 shares in SMML;

        ii. Whether all of ESAH's SMML shares will be transferred to Claimants and whether SPARL and/or SMML in their own capacity will be indebted to Alpha/ESAH;

        iii. Whether there will be changes to SMML's shareholding and/or return of funds to SPARL and/or SMML; and/or

        iv. The resulting impact of these three options on the questions of the damages claimed by Claimants against VIO and the value of VIO's 500 shares in SMML and 2 shares in SPARL.

        (the "Request that Dismissal Order be Conditioned on Disclosure of Impact of the Settlement Agreement")

    c. In the alternative to full disclosure of the [redacted] settlement agreement, an undertaking from each of the Claimants and Alpha/ESAH in which they:

        i. Jointly and severally, confirm that their shareholding in both SPARL and SMML remains unchanged (*i.e.*, that each shareholder continues to hold

FILED: NEW YORK COUNTY CLERK 02/10/2023 05:38 PM
INDEX NO. 650809/2023
NYSCEF DOC. NO. 8
Case 1:23-cv-01439-VEC Document 10-1 Filed 02/27/23 Page 7 of 27
RECEIVED NYSCEF: 02/10/2023

ICDR Case No. 01-20-0000-4822
Procedural Order No. 10
Page 6

the same number of shares in each entity as prior to the settlement);

    ii.  Jointly and severally, confirm that there is no agreement between them, either written or oral, to take any actions that may affect the value of shares in SMML or SPARL (including, but not limited to, dissolution or winding up of either entity), and that neither of them has taken, or anticipates to take, any steps to that effect; and

    iii.  Jointly and severally, expressly recognize that those shares belonging to VIO, as will be determined during these arbitration proceedings, are held in trust during the pendency of the proceedings.

(the "Alternative Request for Undertakings")

d.  A request for further information regarding damages claimed by Claimants against VIO in the Remaining Claims and the scope of those claims, including the impact of the settlement on those claims.

(the "Request for Further Information Regarding Damages Claimed by Claimants")

e.  A request to advance further counterclaims in relation to its contractually-promised shareholding "in light of the changed landscape that exists as a result of the settlement". It was noted that VIO had no information as to how its shares were affected by the settlement. These counterclaims were said to be necessary to protect its shares and to claim for the devaluation of those shares.

    i.  To the extent Alpha/ESAH misappropriated any funds in SMML/SPARL as alleged by Claimants, they must return such funds in full so as not to adversely impact the value of VIO's shares;

    ii.  A claim against Alpha/ESAH for failure to transfer VIO its due shares in SMML stating VIO is entitled to its shares and/or damages in lieu that respects the value of the shares without harm caused to the companies;

    iii.  A claim against Alpha/ESAH for any diminution of value caused by their mismanagement;

    iv.  A claim for reliance on Alpha/ESAH's acts that caused VIO damages;

    v.  A claim for any breaches of the relevant agreements created by the provisions of the settlement agreement.

    vi.  A request for a revised procedural timetable.

Case 1:23-cv-01439-VEC Document 10-1 Filed 02/27/23 Page 8 of 27

(the "Request to Advance Claims Against Alpha/ESAH")

    f.  VIO also asserted that the settling parties were required to "regularize" the procedure relating to the finalized settlement by either requesting a procedural order or a consent award.

16.  On 9 December 2021, Claimants provided a response to VIO's December 6 and 7 comments. Claimants made the following submissions relevant to this procedural order:

    a.  VIO is not entitled to mandated disclosure of the Settlement Agreement, as it has failed to demonstrate that disclosure is necessary to protect its position or permit it to pursue its claims in this arbitration:

        i.  VIO does not have an undisputed present entitlement to shares of SMML;

        ii.  The Settlement Agreement affects only the claims of the settling parties as against each other;

        iii.  The Settlement Agreement cannot alter the party against whom VIO's claims sound, as VIO has only ever asserted claims against Claimants who are the only parties against whom VIO could secure shares or damages;

        iv.  Speculation as to potential future breaches of the Shareholders' Agreement does not justify mandated disclosure of a confidential Settlement Agreement.

    b.  VIO's requested "undertakings" in lieu of disclosure of the legal effect of the Settlement Agreement are "disingenuous", prejudicial, absurd and unreasonable.

    c.  The Settlement Agreement should not have been a surprise to VIO, as it participated in negotiations over the summer, and that the settling parties have been "remarkably transparent" and advised of the potential settlement as they were nearing a potential resolution and did not wait until close of settlement. Claimants say there is no basis for the allegations that the Settlement Agreement was in any way an underhanded or unfair course of conduct adopted to intentionally damage and defraud VIO.

    d.  VIO's request to impose conditions on the dismissal of settled claims is improper, as there is no authority for refusing to dismiss settled claims and the informational demands are unreasonable and unjustified. Claimants characterize VIO's request as compelling the settling parties to continue arbitrating settled claims against each other without their consent. Claimants note that the first two informational demands are moot as a result of their

ICDR Case No. 01-20-0000-4822
Procedural Order No. 10
Page 8

voluntary disclosure and submit that the remaining two are entirely speculative and/or issues to be resolved in the arbitration. Claimants say that these requests are unworkable and that VIO has no basis to demand them.

e.  VIO is not entitled to bring claims against Alpha/ESAH, as it cannot show good cause to amend its claims two years into an arbitration where no such claims have been brought. Claimants note that there is precedent under English law that prevents parties from reframing their claims so as to draw settling parties back into proceedings. Claimants submit that three of VIO's potential claims could and should have been brought earlier and that the other two potential claims "appear to be premised on a bizarre claim for 'tortious settlement'" and that the basis for such claims is speculative. Claimants submit that in the circumstances, VIO's request to amend its claims are really a request to add a party and only because Alpha/ESAH settled with Claimants. Claimants submit that VIO's request should be summarily rejected or, in the alternative, that VIO should have to submit a formal application for leave noting that New York procedural law requires that such an application include a copy of the proposed amended pleading, as well as argument and authority for the *bona fide* nature of the claims, that they are not brought in bad faith and that there is a reason that excuses the substantial and prejudicial delay. The remaining parties could then address the application and the heightened standard that adding new claims against a new party at this stage is "just".

17. In their submission of 9 December 2021, summarized above, Claimants requested that the Arbitrator deny the following of VIO's demands and informal requests:

a.  For disclosure of the Settlement Agreement;

b.  That dismissal of settled claims be conditioned on meeting its informational demand;

c.  To seek leave to amend its case; and

d.  That "*shares belonging to VIO*" should be "*held in trust during the pendency of the proceedings*".

18. Claimants' response included further details as to the Settlement Agreement while specifically reserving their rights as to the confidentiality of any other information related to it. Specifically, Claimants advised:

a.  First, as a result of the Settlement Agreement, Alpha/ESAH has transferred all of its shares in SMML to Symbion Energy Holdings Ltd. (Cyprus)

b.  Second, neither SPARL nor SMML have assumed any indebtedness to

FILED: NEW YORK COUNTY CLERK 02/10/2023 05:38 PM   INDEX NO. 650809/2023
NYSCEF DOC. NO. 8   Case 1:23-cv-01439-VEC   Document 10-1   Filed 02/27/23   Page 10 of 27   RECEIVED NYSCEF: 02/10/2023

ICDR Case No. 01-20-0000-4822
Procedural Order No. 10
Page 9

Alpha/ESAH as a result of the Settlement Agreement.

19. On 10 December 2021, the Arbitrator noted that she would require further briefing on the post-settlement issues and the procedure for resolving the remaining claims in the arbitration. With respect to issues arising out of the Partial Settlement of Claims, she gave the following directions:

> VIO has made a number of requests in the course of its comments of 6 & 7 December 2021. Claimants have now responded to those requests and provided some further information in respect of the settlement, which may impact VIO's requests.

> As noted above, issues of jurisdiction and the scope of my powers are implicated by VIO's requests. Accordingly, to the extent that VIO maintains any of its requests, these need to be properly briefed. In my view, each needs to be made in the context of an appropriate application (identifying the rule or procedural order provision relied upon) that sets out (i) the specific relief requested, (ii) any relevant facts, and (iii) the law/legal principles they say justify the granting of the specific relief. I would like any submissions to be made in the context of the current state of the proceedings, i.e. post-settlement of claims between Claimants and ESAH/Alpha and incorporating any further information it now has on the contents of the settlement agreement. So, while any future applications may include the same arguments and authorities as previously provided, they should be stand-alone applications, i.e. not incorporate by reference any previous submissions.

> By Wednesday, 5 January 2022, VIO is to advise the applications it wishes to make and for which it requests a briefing schedule. This should be in the form of a list of requests (not full applications). The parties should be prepared for an expedited briefing schedule to be set for any applications.

20. Following the 10 December 2021 email providing directions, Alpha/ESAH wrote noting that there were no pending claims against it in the arbitration and requested "an order (i) confirming that all claims by and against Alpha and ESAH have been dismissed, with prejudice, (ii) dismissing Alpha and ESAH from this arbitration, and (iii) removing counsel for Alpha and ESAH from the distribution list for this arbitration moving forward" (the "Dismissal Order").

21. In light of VIO's prior submission that any Dismissal Order be conditional and Claimants' response that there was no authority to refuse to dismiss settled claims and that VIO's conditions were unjustified, VIO was invited to submit comments on the request for Dismissal Order and to specifically address the jurisdictional issue.

22. On 16 December 2021, VIO provided its comments on the request for a Dismissal Order

Case 1:23-cv-01439-VEC   Document 10-1   Filed 02/27/23   Page 11 of 27

and also addressed the statement that Alpha and ESAH had withdrawn evidence, including witness statements submitted jointly on behalf of all respondents.[1] VIO accepted that the settling parties could withdraw their claims against each other but requested that the balance of the Dismissal Order be denied.[2] VIO requested that any decision on the Dismissal Order be provided in the form of a partial award.

23.     On 17 December 2021, Claimants requested permission to provide a response to VIO's submission of 16 December 2021. Permission was granted as follows:

> Both Claimants and Respondents ESAH/Alpha are invited to provide a response to this submission by 22 December 2021. I note that VIO's submission addresses, in part, the possibility that Claimants and ESAH/Alpha would seek a consent award confirming the settlement agreement. I had not understood this to be part of ESAH/Alpha's request. Accordingly, in addition to any other comments the parties wish to make, I would be grateful if they could (i) confirm whether a consent order is being sought in relation to the partial settlement and (ii) specifically address VIO's request that this matter be dealt with by way of a partial award.

24.     Claimants and Alpha/ESAH subsequently confirmed that they were not seeking a consent award or order in relation to the Settlement Agreement.

25.     Claimants provided a response to VIO's submission on 22 December 2021. Claimants objected to the scope of VIO's 16 December 2021 submission and requested that portions of that submission be struck from the record. In addition, Claimants addressed VIO's request that any decision on the Dismissal Order be provided in the form of a partial award.

26.     On 5 January 2022, VIO advised that it believed its pending requests included, *inter alia*, (1) the Request for Disclosure of the Settlement Agreement, (2) the Request to Advance Claims Against Alpha/ESAH and (3) the Request that the Dismissal Order be refused or deferred until decision on the request to amend its pleadings. Further, VIO requested a briefing schedule on the appropriate form of the Dismissal Order.

27.     On 6 January 2022, Claimants requested and received permission to file a response to VIO's 5 January letter.

---

[1]   VIO's submission also addressed issues resulting from the request to "withdraw" any witness statements. As Alpha/ESAH subsequently confirmed that its request for a Dismissal Order does not seek a ruling as to any effect of its dismissal on the witness evidence in the proceedings, these arguments are not summarized here and will be addressed at an appropriate stage.

[2]   VIO's submission included argument addressing the situation in the event that Alpha/ESAH's request was for a consent award dismissing the claims as between the settling parties. As the settling parties subsequently confirmed that neither was seeking a consent award, these arguments will not be discussed further.

28.    On 10 January 2022, Claimants submitted their response to VIO's 5 January letter. Claimants argued that VIO had failed to follow the instructions provided on 10 December 2021 to list the applications that it maintained so that a briefing schedule could be put in place. Further, Claimants stated that VIO's list of pending issues was not accurate, as it erroneously included the Request for Disclosure of the Settlement Agreement and Request to Advance Claims Against Alpha/ESAH. Claimants submitted that these issues have not been fully briefed and are not ripe for decision. Claimants also argued that VIO undermined the purpose of the application letter in order to disrupt the proceedings. Claimants also took issue with VIO's description of issues surrounding depositions.

29.    In parallel with the above submissions, the Parties briefed Claimants' objections to VIO's Particularization. On 10 January 2022, the Arbitrator issued Procedural Order No. 9, which addressed these objections and settled the scope of VIO's counterclaims as of 8 September 2021. The scope of Claimants' remaining claims against VIO has not yet been determined.

30.    On 14 January 2022, the Arbitrator wrote to the Parties to invite VIO to provide its comments on the form of the decision addressing the Dismissal Order and to seek clarification and confirmation of VIO's position as to the state of the briefing of its applications.

31.    On 15 January 2022, Claimants wrote to object to the Arbitrator's request for clarification and confirmation of VIO's position and noted that their request that portions of VIO's 16 December 2021 submission be struck from the record had not been addressed (the "Request to Strike").

32.    On 15 January 2022, the Arbitrator confirmed that the Request to Strike had not yet been addressed and invited VIO to submit its comments in response.

33.    On 17 January 2022, VIO made its submissions as to the form of the dismissal arguing that a decision in the form of a partial award is appropriate and confirmed that it is of the view that its requests for disclosure of the settlement agreement, VIO's request to bring claims against Alpha and ESAH, and the refusal or deferment of any dismissal order pending the decision on VIO's request to bring claims against Alpha/ESAH are properly pending and ripe for determination.

II.    **Positions of the Parties**

   a.  **Alpha/ESAH**

34.    On 10 December 2021, Alpha/ESAH made the following request:

FILED: NEW YORK COUNTY CLERK 02/10/2023 05:38 PM

NYSCEF DOC. NO. 8

INDEX NO. 650809/2023

RECEIVED NYSCEF: 02/10/2023

Case 1:23-cv-01439-VEC  Document 10-1  Filed 02/27/23  Page 13 of 27

ICDR Case No. 01-20-0000-4822
Procedural Order No. 10
Page 12

Respondents Alpha and ESAH respectfully request an order confirming that all their claims and all the claims against them have been dismissed with prejudice.

Alpha/ESAH and Claimants have resolved their respective claims against each other. Alpha and ESAH therefore no longer have any claims pending in this arbitration, and no claims are pending against them.

VIO has suggested that they may assert claims against Alpha and ESAH. Until VIO does so—and until VIO properly serves Alpha and ESAH with those claims—Alpha and ESAH are no longer parties to this arbitration.

Alpha and ESAH therefore request that Madame Arbitrator promptly enter an order (i) confirming that all claims by and against Alpha and ESAH have been dismissed, with prejudice, (ii) dismissing Alpha and ESAH from this arbitration, and (iii) removing counsel for Alpha and ESAH from the distribution list for this arbitration moving forward.

35. On 14 January 2022, Alpha/ESAH provided the following clarification at the Arbitrator's request:

Alpha/ESAH agree with Claimants: the issue of dismissal is distinct from the issue of how witness statements submitted by Alpha/ESAH should be treated following their dismissal.

Alpha/ESAH seek only an order of dismissal. Alpha/ESAH's representatives—namely Messrs. Alexander Oppenheim, Dean Oppenheim, and Eytan Stibbe—withdrew their witness statements when the parties informed Madame Arbitrator of the settlement agreement, as communicated by the Claimants in their 3 December 2021 email, which Alpha/ESAH confirmed is accurate. Any questions concerning the evidentiary weight of those witness statements going forward should not delay the dismissal of Alpha/ESAH from this arbitration.

b. **VIO**

36. VIO accepts that the settling parties may withdraw their claims against each other and that they do not have to prosecute their claims against each other if they no longer wish to do so.

37. However, VIO submits that the settling parties cannot take unilateral action to prejudice VIO's claims and that the balance of the requested Dismissal Order does this. VIO frames the question as whether the Tribunal "can ensure the integrity of this proceeding, and to deliver an enforceable Award, if ESAH/Alpha are dismissed (and their evidence "withdrawn")" given the unique circumstances of this case.

Case 1:23-cv-01439-VEC    Document 10-1    Filed 02/27/23    Page 14 of 27

38.  First, the claims in the arbitration concern the rights and obligations under the Shareholders' Agreement to which all existing parties are bound and the Tribunal has correspondent powers of case management and entailing discretion and duty to deliver an enforceable Award. VIO asserts that it will suffer substantial prejudice if Alpha/ESAH's request is granted without affording VIO a right to state its claims and prosecute them to an enforceable outcome. It says this prejudice is disproportionately greater than any inconvenience caused to Alpha/ESAH. VIO states that the request was made spontaneously and after its request to assert claims against Alpha/ESAH in the arbitration.

39.  Second, VIO says that Alpha/ESAH and VIO have relied on common evidence to bring their claims. VIO advises that "[s]ome of these matters are also under criminal investigation in Madagascar, and are being pursued in the company's interest by VIO and Alpha/ESAH and that Alpha/ESAH's request seeks to unilaterally "erase evidence from this proceeding and to allow ESAH/Alpha to evade any liability in respect of the return of the funds that had been taken from the company and that would remain, to the best of VIO's understanding, unaccounted for as a result of the purported settlement." VIO submits that the Tribunal must reject any outcome that would bless illicit funds with the legitimacy of an international arbitration order, as that would be an abuse of the arbitral process.

40.  Third, VIO submits that the settling parties have rejected all requests for candor and transparency with respect to the Settlement Agreement. VIO alleges that the Settlement Agreement was designed "to pull the rug out from under VIO's claims in this arbitration and also to extinguish liability as to the return of very significant amounts of the company's funds that the Settling Parties appropriated without any authorization." VIO says that the share capital of the Plant, including those shares for which it seeks a remedy in this arbitration, have been tendered to third parties. VIO submits that [i]f ESAH/Alpha caused, negotiated, or knew about a transfer of VIO's shares…their dismissal from these proceedings would prevent VIO from seeking and obtaining legal remedies for the transfer or attempted transfer." VIO argues that the Tribunal should not approve dismissal that frustrates its relief in these proceedings.

41.  VIO says that the Tribunal has full power to deny ESAH/Alpha's request insofar as it seeks anything beyond recognition of the withdrawal of Symbion's claims against ESAH/Alpha and vice versa. VIO relies on New York procedural law and the FAA for the proposition that arbitrators "possess broad latitude to determine the procedures governing their proceedings."

42.  VIO submits that English law provides for the terms of a settlement to be examined to assess their effect on the arbitration proceedings; that the tribunal must be satisfied that all claims have been disposed of in the settlement; and that it is for the tribunal to terminate the substantive proceedings.

FILED: NEW YORK COUNTY CLERK 02/10/2023 05:38 PM INDEX NO. 650809/2023
NYSCEF DOC. NO. 8 RECEIVED NYSCEF: 02/10/2023

Case 1:23-cv-01439-VEC Document 10-1 Filed 02/27/23 Page 15 of 27

ICDR Case No. 01-20-0000-4822
Procedural Order No. 10
Page 14

43. VIO argues that the requirement that "integrity and fairness" to all the parties be maintained mandates denial of ESAH/Alpha's request because it would create prejudice to VIO and compromise the integrity of the proceedings and risk the enforceability of any Award if a necessary party to the Shareholders' Agreement is not properly bound by the tribunal's award. VIO notes that third parties can be joined into arbitrations as nominal parties in order to ensure that they are bound by the final Award. VIO says that ESAH/Alpha's request would make them unavailable for evidence or to receive the final Award, which VIO says may implicate their actions and require them to provide a remedy.

44. VIO submits that granting ESAH/Alpha's request would limit VIO's ability to present its case by dismissing them from the proceeding before VIO could assert the claims it has sought leave to bring, including claims arising from the settlement itself and ESAH/Alpha's conduct during settlement negotiations. VIO also points to ESAH/Alpha's request to "unilaterally 'withdraw' evidence that was submitted jointly and by and on behalf of VIO asks [the tribunal] to enter an order ignoring relevant and material evidence that has already been submitted, simply because some parties have changed their mind."

45. VIO submits that granting the Dismissal Order would be of limited effect, as it would have to either bring a separate arbitration against ESAH/Alpha and seek consolidation for procedural efficiency or seek leave to use compulsory processes to re-obtain evidence that is already before the Tribunal, which would lead to unnecessary time and cost implications in this proceeding.

46. VIO also says that releasing ESAH/Alpha from the proceedings would be premature before the extent of Claimants' remaining case against VIO is known.

47. VIO argues that ESAH and Alpha must be bound by a final award in these proceedings and that it is entitled to fully brief, make submissions, and be heard on its application to bring claims against ESAH/Alpha before they are removed from the proceedings. Otherwise, it would call into question the Tribunal's jurisdiction to permit VIO to bring those claims and also would make any Final Award that may need to bind actions of ESAH/Alpha to not be validly made. VIO submits that the Settlement Agreement cannot relieve the settling parties of any of their obligations under the Shareholders' Agreement, which prohibits the assignment of any rights or obligations without the other parties' consent.

48. VIO submits that case management discretion must be exercised to ensure basic principles of due process, including treating the parties with equality and that each has a right to be heard and is given a fair opportunity to present its case. Further, the duty to render an enforceable award requires that a party was able to present its case. It summarizes its position as follows:

> Here, allowing the dismissal of ESAH/Alpha as a party would violate these principles: it would deprive VIO of the ability to assert its claims against ESAH/Alpha, which it had previously informed the Tribunal it planned to do;

FILED: NEW YORK COUNTY CLERK 02/10/2023 05:38 PM          INDEX NO. 650809/2023
NYSCEF DOC. NO. 8     Case 1:23-cv-01439-VEC   Document 10-1   Filed 02/27/23   Page 16 of 27          RECEIVED NYSCEF: 02/10/2023

ICDR Case No. 01-20-0000-4822
Procedural Order No. 10
Page 15

it would deprive VIO and the Tribunal of the ability to consider relevant and material evidence based on an agreement that neither VIO nor the Tribunal is a party to; it would risk complicity in misappropriation of the project's assets; and it would likely complicate the continuing proceedings by requiring resort to compulsory process.

49.    VIO states that the prejudice is heightened because the Settlement Agreement itself is a source of VIO's injury.

50.    VIO says that, in any event, the Tribunal should not grant ESAH/Alpha's request while VIO's Rule R-6 application to amend its pleadings is pending. VIO submits that, as a matter of law, both Claimants and ESAH/Alpha held VIO's shares on trust for VIO and owed it fiduciary duties. VIO also submits that the settling parties, through the Settlement Agreement, "have conspired to transfer VIO's shares to a third party", which it says is a further breach of the Shareholders' Agreement. VIO also asserts that it is entitled to an award of damages against ESAH/Alpha because they breached sections s.3.4(1)(i), 9.1 and 9.2 of the Shareholders' Agreement. VIO asserts the following with respect to its claims:

> The claims that VIO seeks permission to maintain are those that are already being prosecuted in this arbitration and concern the Parties' agreement as to the funding and management of SPARL. Up to this point, those claims were brought by Claimants against ESAH/Alpha and required ESAH/Alpha to return the funds that they improperly withdrew from SPARL. However, it is now apparent that Claimants no longer intend to bring those claims. Accordingly, it is necessary for VIO to maintain those claims so as to ensure that: (i) ESAH/Alpha are not permitted to retain funds withdrawn improperly, and in breach of the Shareholders' Agreement, from SPARL and/or SMML; (ii) those funds are returned to SPARL and/or SMML by ESAH/Alpha; and (iii) the viability of the Plant and SPARL is maintained.
>
> None of these claims are new in this arbitration and, until now, it was not necessary for more than one party to bring them. VIO has sought information from Claimants, ESAH, and Alpha about the terms of their settlement agreement in part to ensure that the funds that had been misappropriated from SPARL and/or SMML have or will be returned. To date, those parties have refused to provide that information. Accordingly, VIO has been left with no choice but to seek permission to maintain the claims brought by the Claimants in this respect in its own name. For the avoidance of doubt, VIO's primary intention is to ensure that the Parties comply fully with their obligations under the Shareholders' Agreement, that no party retains funds that they have misappropriated from the joint venture and that SPARL and/or SMML have sufficient resources available to them to continue to operate the Plant.

51.    VIO also says that the surrounding circumstances militate against granting the request. In this section of VIO's submission, VIO (i) made reference to the findings of the Pôle Anti-

Case 1:23-cv-01439-VEC Document 10-1 Filed 02/27/23 Page 17 of 27

Corruption ("PAC") in Madagascar; (ii) Claimants' unrelated litigation in respect of investments in Tanzania; and (iii) the proposed sale of shares in SMML and/or SPARL to a third party, which it says implicates its rights in these proceedings.[3]

52. Finally, VIO requested that the Tribunal issue a partial Award of its decision and not a procedural ruling. First, VIO submits that the Dismissal Order effectively requests a final disposition of some, but not all of the claims in the arbitration that will have preclusive effect. As this is a substantive issue, a partial Award is more proper. Second, VIO says that the request for dismissal implicates issues relating to the fairness and integrity of the proceedings and the fundamental right to due process of all parties. Further, VIO submits that the Tribunal cannot summarily dismiss, with prejudice, those claims in the proceedings that pertain to the theft of illicit funds, without first assuring itself of compliance with applicable anti-money laundering statutes. The seriousness of these issues require that an award and not a procedural order be rendered. VIO notes that no prejudice would result to the other parties out of the form of decision.

53. VIO confirmed its view that its requests for (i) disclosure of the settlement agreement, (ii) that Alpha/ESAH's request should be refused or deferred pending the Tribunal's decision on VIO's request to bring claims against Alpha/ESAH, and (iii) permission to bring claims against Alpha/ESAH were ripe for determination noting that they had been briefed in the course of the submissions on the Request for a Dismissal Order.

### c. Claimants

54. Claimants' primary submission is that VIO failed to provide authority to support its demands that the Tribunal refuse to dismiss Alpha/ESAH and "bifurcate these proceedings" and thus has failed to meet its burden. Claimants maintain that the dismissal of a party once the claims against it are settled is uncontroversial and fully consonant with the Rules noting that arbitration is a creature of consent.

55. Claimants submit that the dismissal and the witness statements are analytically distinct issues that should be addressed by the remaining Parties as the proceeding moves forward. Claimants say that to the extent that VIO is arguing that dismissal should be denied to facilitate procuring witness testimony, it has not presented any authority to support such request.

56. In addition, Claimants objected to the scope of VIO's submission arguing that it goes beyond a response to the request for a Dismissal Order. Further, Claimants objected to the content of VIO's submission as it related to surrounding circumstances submitting

---

[3] These portions of VIO's submission were objected to by Claimants who asked that they be struck from the record. That request has not yet been addressed and remains outstanding. However, as these portions of VIO's argument are not relevant to the reasoning, below, they have not been considered in arriving at the decision in this procedural order.

that they were "baseless, defamatory accusations [that] are effectively unscheduled submissions" and must be struck from the record entirely. Claimants categorically denied all of the allegations set out in VIO's submission.

57.  Claimants summarized their position as follows:

    a.  The only claims brought by Alpha/ESAH are against Claimants.

    b.  The only claims brought against Alpha/ESAH are brought by Claimants.

    c.  Alpha/ESAH and Claimants have settled their differences in a sound commercial settlement known by VIO (and Madame Arbitrator) to have been in negotiations since at least June 2021, and which VIO opted out of.

    d.  There is therefore no reason for Alpha/ESAH to remain in these proceedings.

58.  Claimants submit that VIO had ample opportunity to pursue claims against Alpha/ESAH but did not and it should not belatedly be able to do so now.

59.  Claimants also argue that VIO has misstated the record (but seeks no relief in this regard).

60.  Claimants opposed VIO's request that Alpha/ESAH's dismissal be done via partial award as "unnecessary, inapplicable to the procedural posture of the case, and a waste of time." Claimants say that this effectively bifurcates the proceeding frustrating the other Parties with unnecessary costs and delays in final resolution of this dispute. Claimants note that a partial award is appropriate to record a final decision on the merits of a particular aspect of the case and not a procedural decision, which is what is being requested.

61.  Claimants made the following request for relief:

    a.  Strike the highlighted passages from the Submission as provided in Appendix A;

    b.  Grant, as requested, an order dismissing Alpha/ESAH; and

    c.  Deny VIO's request for a bifurcated proceeding and a partial award as unnecessary and contrary to the efficient resolution of the present dispute.

### III.  Analysis and Decision

#### a.  Introduction

62.  In light of the timing of Alpha/ESAH's request, the issues to be decided have become intertwined. When Alpha/ESAH submitted their request, VIO had made the following requests arising out of notification of the finalization of the Settlement Agreement:

    a.   The Request for Disclosure of the Settlement Agreement

    b.   The Request that any Dismissal Order be Conditional on Disclosure of the Impact of the Settlement Agreement

    c.   The Alternative Request for Undertakings

    d.   The Request for Further Information Regarding the Damages Claimed by Claimants

    e.   The Request to Advance Claims Against Alpha/ESAH

63. Claimants provided some of the further information requested by VIO regarding the Settlement Agreement but otherwise opposed VIO's requests on various grounds. In light of the evolution of the claims as a result of the Partial Settlement, briefing schedules were set to settle the scope of the remaining claims as between Claimants and VIO.[4] VIO was directed to submit a list of the applications that it maintained after this briefing was complete and taking into account any further information.

64. About an hour later, Alpha/ESAH's request for a Dismissal Order was received, which led to further briefing on that request, which addressed in further detail VIO's Request that any Dismissal Order be Conditional on Disclosure of the Impact of the Settlement Agreement and the Request to Advance Claims Against Alpha/ESAH. VIO asserts that these requests, as well as the Request for Disclosure of the Settlement Agreement, are properly before the Tribunal and ripe for determination.

65. Claimants agree that Alpha/ESAH's Request for a Dismissal Order has been fully briefed and do not take issue with VIO's related Request that any Dismissal Order be Conditional.[5]

66. However, Claimants disagree that the Request to Advance Claims Against Alpha/ESAH or the Request for Disclosure of the Settlement Agreement have been fully briefed or are ripe for decision.

67. Although VIO set out in summary the claims that it wished to advance against Alpha/ESAH and has requested permission to advance these claims, there is no formal application to amend the pleadings and there has been insufficient articulation as to the specific claims (the facts relied on, the contractual provisions at issue and the law relied upon) so as to allow for any decision to allow VIO's claims to be amended. VIO's application will depend

---

[4]   VIO's Particularization has now been admitted. Claimants' revised claims remaining as against VIO, including any further information regarding the damages claimed, have yet to be fully addressed or resolved. These will be discussed further at the next case management conference as to what steps remain.

[5]   This was item 5 in VIO's list of 5 January 2022. Claimants submitted "Claimants do not that [*sic.*] dispute **items 1, 2 and 5** from VIO's list are properly before Madame Arbitrator for determination." {Emphasis in original}.

FILED: NEW YORK COUNTY CLERK 02/10/2023 05:38 PM
NYSCEF DOC. NO. 8

INDEX NO. 650809/2023
RECEIVED NYSCEF: 02/10/2023

ICDR Case No. 01-20-0000-4822
Procedural Order No. 10
Page 19

somewhat on the outcome of Alpha/ESAH's Request for a Dismissal Order. This procedural order does not decide the Request to Advance Claims Against Alpha/ESAH. However, the fact that VIO made this request has been considered in the context of its arguments that any Dismissal Order be conditional.

68.  Similarly, the Request for Disclosure of the Settlement Agreement has not been fully briefed as envisaged in the December 10 Directions, which provided in relevant part as follows:

> …Accordingly, <u>to the extent that VIO maintains any of its requests [of 6 & 7 December], these need to be properly briefed</u>. In my view, each needs to be made in the context of an appropriate application (identifying the rule or procedural order provision relied upon) that sets out (i) the specific relief requested, (ii) any relevant facts, and (iii) the law/legal principles they say justify the granting of the specific relief. <u>I would like any submissions to be made in the context of the current state of the proceedings</u>, i.e. post-settlement of claims between Claimants and ESAH/Alpha and <u>incorporating any further information it now has on the contents of the settlement agreement.</u> So, while any future applications may include the same arguments and authorities as previously provided, <u>they should be stand-alone applications, i.e. not incorporate by reference any previous submissions.</u>

> [Emphasis added].

69.  The 6 December Request for Disclosure of the Settlement Agreement did not include the level of detail requested and it did not incorporate "any further information it now has on the contents of the settlement agreement." The requests that were "maintained" were to be the subject of these "future applications" and were specifically directed to be stand-alone submissions. This was to ensure that the arguments were tailored to the current circumstances and that the legal arguments were all in one place. Accordingly, VIO's Request for Disclosure of the Settlement Agreement has not been fully briefed and is not ripe for determination. Again, the fact that VIO made this request has been considered in the context of Alpha/ESAH's Request for a Dismissal Order.

70.  Accordingly, this Procedural Order No. 10 addresses only Alpha/ESAH's request for a Dismissal Order in these proceedings and, incidentally, VIO's request that the Dismissal Order be refused or deferred until decision on the request to amend its pleadings.

71.  For the avoidance of doubt, despite reference to submissions in the procedural history to other issues, it does not address:

     a.  the evidentiary issues that arise out of the possible departure of Alpha/ESAH from the proceedings;

FILED: NEW YORK COUNTY CLERK 02/10/2023 05:38 PM       INDEX NO. 650809/2023
NYSCEF DOC. NO. 8    Case 1:23-cv-01439-VEC    Document 10-1    Filed 02/27/23    Page 21 of 27    RECEIVED NYSCEF: 02/10/2023

ICDR Case No. 01-20-0000-4822
Procedural Order No. 10
Page 20

    b.   Claimants' request to strike highlighted passages from VIO's 16 December Submission, as these have yet to be fully briefed and considered; or

    c.   VIO's not yet briefed (if they are to be maintained) (1) Request for Disclosure of the Settlement Agreement, or (2) Request to Advance Claims against Alpha/ESAH.

### b. Context for Decision

72.    In order to determine whether the Arbitrator should grant the Dismissal Order, and whether there is any jurisdiction to do anything other than grant that order, it is necessary to review the procedural framework of the arbitration.

73.    The Shareholders Agreement contains an arbitration agreement at Article 12, which provides as follows:

> <u>Section 12.1</u> In the event that any dispute arises between the Parties regarding the application or interpretation of any provision of this Agreement, the aggrieved Party shall promptly notify the other Party of the dispute in writing. If the Parties fail to resolve the dispute within 7 business days, each Party shall have the right to pursue the resolution of such dispute in accordance with the provisions set forth below.

> <u>Section 12.2</u> Any dispute arising from or in connection with this Agreement, including any question regarding its existence, validity, or termination, shall be first attempted to be resolved by amicable negotiation by the Parties hereto. If the dispute cannot be resolved within sixty days from such attempt, it shall be submitted to a binding arbitration proceeding to be conducted under the auspices of the Commercial Arbitration Rules of the American Arbitration Association in New York City, New York, USA, for arbitration which shall be conducted in English. The place of the arbitration shall be New York City, New York, USA. The number of arbitrators shall be one, unless otherwise agreed between the Parties hereto. The award of such arbitration is final and binding upon the Parties hereto.

> (the "**Arbitration Agreement**")

74.    This arbitration is proceeding in accordance with the Arbitration Agreement in the Shareholders' Agreement set out above, including the Commercial Arbitration Rules of the AAA.

75.    As is set out more fully in the introduction and procedural history to Procedural Order No. 1, as well as that referenced in paragraph 1, above, the summary of the pleadings to date in the arbitration is as follows:

Case 1:23-cv-01439-VEC   Document 10-1   Filed 02/27/23   Page 22 of 27

a. Claimants initially commenced this arbitration against Alpha as the only respondent.

b. After Alpha provided its initial answer and counterclaims, Symbion amended its demand for arbitration and statement of claim to, *inter alia*, include ESAH and VIO as respondents to its claims (the "Amended Demand"). The Amended Demand included eight causes of action against Alpha/ESAH,[6] three of which were also asserted against VIO;[7] it also provided Symbion's answer to Alpha's counterclaims.

c. Shortly thereafter, Alpha/ESAH filed their Answering Statement and Amended Counterclaims, which included claims against the three Symbion entities that are collectively referred to as Claimants in the arbitration. The Amended Counterclaims included nine claims against Claimants.

d. Following the first procedural conference, VIO which was at that point in time also represented by Choate in the arbitration, provided its Answering Statement and Counterclaims, which included two counterclaims against Claimants related to the alleged failure to transfer shares as required by the Shareholders' Agreement (§§ 2.2 and 3.4.4(d)).

e. As recorded in Procedural Order No. 1, the parties agreed to simultaneously exchange memorials as to each party's claims and counter-memorials.

  i. Claimants' memorial elaborated on its causes of action as against all of the Respondents highlighting that three of the claims were also against VIO but not otherwise separating out their claims or argument against specific respondent(s).[8]

  ii. All three Respondents filed a single memorial that included all of their claims against Claimants and alleged that Claimants had damaged the Plant. At a high level, these included:

    1. a claim that Claimants breached the Shareholders' Agreement by embezzling funds from the Plant in various ways;

---

[6] Due to a numbering error, the Amended Demand contains two "Seventh" causes of action so actually eight in total.

[7] Each "Cause of Action" set out in the Amended Demand was said to be "Against Respondents Alpha and ESAH" or "Against Respondents Alpha, ESAH, and VIO". This latter category included the Second Cause of Action for Breach of Contract – Sections 9.1 and 9.2; Fourth Cause of Action for Breach of Contract – Section 10.1; and Seventh Cause of Action (on p. 34) for Defamation.

[8] As noted by Claimants in a subsequent filing, the Claimants' Memorial contains a numbering error such that it appears that there are eight causes of action. In fact, only seven causes of action consistent with those in the Amended Demand are included in Claimants' Memorial.

Case 1:23-cv-01439-VEC   Document 10-1   Filed 02/27/23   Page 23 of 27

2.  a claim that these acts also constituted the tort of self-dealing;

3.  a claim for breach of contract alleging that Claimants failed to adequately maintain and mismanaged the Plant;

4.  a claim for breach of contract alleging that Claimants actively attempted to ensure that the Plant would fail after February 2020;

5.  a claim that certain of these acts also constituted the torts of inducing breach of contract, conspiracy (lawful and unlawful) and unlawful interference;

6.  a claim for breach of contract alleging failure to comply with provisions regarding the distribution of shares and corporate governance; and

7.  a claim that these acts also gave rise to the torts of fraudulent misrepresentation/deceit and negligent misrepresentation.

76.  Respondent's Memorial, for the most part, describes all claims as being brought collectively. The exception is found in the two allegations concerning the ownership of shares where one of these claims is described as having breached an alleged duty owed specifically to VIO. This is found at paragraph 124, which, for convenience, is reproduced here:

> <u>Claimants have failed to distribute stock</u> in the Plant's holding company as required by the Agreement. The Agreement required Claimants to transfer 500 shares in the Plant's holding company to VIMA Real Estate S.A.R.L., which was subsequently replaced as a shareholder by Vision Indian Ocean ("VIO"). *See* Ex. R-001 § 2.2; R-003. <u>Claimants never did so, and have instead retained the shares for their own benefit</u>. *Compare id*. § 3.4.4(d) (showing Claimants should own 1100 shares and VIMA should own 500 shares), *with* R-129 at 1 (showing Claimants own 1,600 shares and VIO owns none). VIO's principal, Mr. Zouzar Bouka, has repeatedly asked Claimants to transfer the shares, but they have refused to do so. Witness Statement of Zouzar Bouka ("Z. Bouka Smt.") ¶ 9. <u>By failing to transfer 500 shares to VIO, Claimants have breached Sections 2.2 and 3.4.4 (d)</u>. *See* Ex. R-001 §§ 2.2, 3.4.4(d). <u>They should be required to transfer 500 shares to VIO</u>. *See id*.
>
> [Emphasis added].

77.  Following the document production phase, the parties negotiated a possible settlement of all of the claims in the arbitration. When these negotiations failed, VIO engaged separate counsel and Alpha/ESAH continued to be represented by Choate.

78.     VIO's new counsel requested an opportunity to particularize VIO's claims. In response to a request for clarification by the Arbitrator, VIO advised that it would "(a) note which of Respondents' counterclaims it joins on its own behalf, (b) elucidate the legal basis under English law, as necessary, on which it states its counterclaims, and (c) note the factual bases already on the record upon which it states its counterclaims."

79.     From the outset, despite being a multi-party arbitration, the arbitral procedure has been arranged as two "sides": Claimants presenting its claims against Respondents and Respondents presenting their counterclaims against Claimants. VIO's Particularization was consistent with this procedure asserting counterclaims against Claimants only.

80.     In addition, the agreed procedure for the arbitration required the Parties to put forward their full cases in their memorials, together with their reliance evidence. All claims arose from past events, evidence of which was set out in the memorials.

81.     The Arbitrator's jurisdiction arises out of the agreement of the Parties to resolve the disputes set out in the Notices of Arbitration and Counterclaims as elaborated in the memorials. Pursuant to Rule-6, once an arbitrator has been appointed, no new or different claim may be submitted except with the arbitrator's consent.

82.     If claims are settled and withdrawn, the Arbitrator no longer has the jurisdiction to decide those claims, as there is no longer a dispute between the settling parties. It is in this context that Alpha/ESAH's request for a Dismissal Order must be considered.

### c.   Alpha/ESAH's Request

83.     Alpha/ESAH has requested an order:

    a.   confirming that all claims by and against Alpha and ESAH have been dismissed, with prejudice,

    b.   dismissing Alpha and ESAH from this arbitration, and

    c.   removing counsel for Alpha and ESAH from the distribution list for this arbitration moving forward.

84.     VIO does not take the position that the Settling Parties cannot settle their claims as against each other and, accordingly, there is no dispute that the Arbitrator can take note of the withdrawal of claims and that the Settling Parties cannot be compelled to continue to advance their claims in the arbitration.

85.     The Parties disagree as to what jurisdiction remains following the settlement of all claims by and against Alpha and ESAH. The Settling Parties submit that withdrawal of existing claims entails dismissal of the Parties against whom no claims remain or are advanced.

Case 1:23-cv-01439-VEC   Document 10-1   Filed 02/27/23   Page 25 of 27

VIO argues that following the settlement of claims, it is for the Arbitrator to decide the effect on the substantive proceedings and that the Arbitrator has the power and duty to organize the proceedings to ensure "integrity and fairness" to all the parties be maintained.

86. In some circumstances there may be residual discretion to require a party to remain a party to the proceedings even after claims have been settled in order to maintain the integrity of the proceedings. For the following reasons, the Arbitrator is not persuaded that appropriate circumstances exist in this case.

87. VIO submits that this power includes the ability to require Alpha/ESAH to remain parties to the arbitration to ensure that any final award remains enforceable. VIO points to the practice of joining third parties to arbitrations as nominal parties in order to ensure that they are bound by the final award as evidence of this power.

88. While this practice confirms that there is a distinction between a party to a dispute (or arbitration agreement) and a party to the arbitration, it does not confirm jurisdiction to add non-parties to the dispute as parties to the arbitration. Usually, in those cases, the non-party to the dispute has consented to being a nominal party to the arbitration. Further, the notion of being a nominal party entails that it does not bring or face claims in the arbitration. What VIO is requesting is somewhat different.

89. VIO argues that the Arbitrator can deny Alpha/ESAH's request because it would create prejudice to VIO and compromise the integrity of the proceedings. VIO argues that it is the existence of the Settlement Agreement that gives rise to its need to amend its claims in the arbitration to bring claims against Alpha/ESAH. It says that before the Settlement Agreement, there was no need for it to separately advance its claims against Alpha/ESAH, as those claims were maintained by Claimants.

90. While there is some logic to this position, it is inconsistent with the manner in which the disputes were submitted to arbitration and the arbitral procedure designed and agreed. It is not clear that the parties consented to a procedure that allows Respondents to bring claims against each other. The procedure would have to be re-written in order to accommodate crossclaims at this stage of the proceedings. This limits any residual discretion that the tribunal might have to allow new claims in these proceedings at this stage.

91. VIO also argues that the consequent withdrawal of evidence by Alpha/ESAH causes it prejudice and compromises the integrity of the proceedings. The consequences of Alpha/ESAH's withdrawal and these evidentiary issues will need to be addressed in due course, but these issues are distinct from the withdrawal itself. VIO's arguments here relate to judicial economy, which is not a sufficient basis to ground jurisdiction to refuse to allow Alpha/ESAH to withdraw.

Case 1:23-cv-01439-VEC Document 10-1 Filed 02/27/23 Page 26 of 27

92. For these reasons, the Arbitrator is not persuaded that in the circumstances of this case there is a basis for refusing to recognize the withdrawal of claims and/or to keep Alpha and ESAH as parties to this arbitration.

### d. Form of Decision

93. VIO has requested that this decision be recorded in the form of a partial award, as dismissing claims with prejudice is a determination of substantive rights.

94. Alpha/ESAH have requested an order that "confirms that all claims by and against Alpha and ESAH have been dismissed, with prejudice". It is a tribunal that "dismisses" claims and this wording implies that the Arbitrator has considered the claims and dismissed them. This is not the case.

95. The claims have been settled and Alpha/ESAH and Claimants have advised that they have been withdrawn with prejudice. The Settlement Agreement has not been provided. It is unknown whether these claims were addressed or liability apportioned such that it can be confirmed that the claims have been "dismissed".

96. Accordingly, the Arbitrator declines to order that the claims have been dismissed and instead confirms that all claims by and against Alpha and ESAH have been withdrawn with prejudice.

97. For the avoidance of doubt, this order records only the procedural withdrawal of the claims by and against Alpha and ESAH and makes no decision as to the merits of those claims. The claims asserted by Alpha and ESAH against Claimants continue to be asserted in these proceedings by VIO against Claimants.

98. Further, this decision does not endorse or express any view on the Settlement Agreement.

99. It follows that, as all claims by and against Alpha and ESAH have been withdrawn; there are no pending claims by or against them; and they have not consented to remain parties to the arbitration, there is no basis for Alpha and ESAH to remain as parties to the arbitration or for their counsel to be copied on correspondence related to the arbitration.

100. For the avoidance of doubt, VIO's argument that Alpha and ESAH must remain as necessary parties to the arbitration to ensure that any final award is enforceable against them has been considered. As none of the current claims in this arbitration are made against Alpha and ESAH, the Arbitrator is not persuaded that their participation is required for this purpose.

101. As this decision addresses purely matters of procedure and makes no findings as to the substance of any claims, a procedural order is the more appropriate form for this decision.

FILED: NEW YORK COUNTY CLERK 02/10/2023 05:38 PM INDEX NO. 650809/2023
NYSCEF DOC. NO. 8 RECEIVED NYSCEF: 02/10/2023

### IV.   Order

102.   For the foregoing reasons, the Arbitrator:

     a.   declines to issue this decision in the form of a partial award;

     b.   confirms that all claims by and against Alpha and ESAH have been withdrawn, with prejudice,

     c.   dismisses Alpha and ESAH from this arbitration, and

     d.   removes counsel for Alpha and ESAH from the distribution list for this arbitration moving forward.

### V.   Amendments

103.   This Procedural Order No. 10 may be amended or supplemented, and the procedures for the conduct of this arbitration modified, pursuant to such further directions or Procedural Orders as the Arbitrator may from time-to-time issue.

Place of arbitration:   New York, New York, U.S.A.

18 January 2022

Tina M Cicchetti
Sole Arbitrator