```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 05/04/2023
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------- X
SYMBION POWER HOLDINGS LLC and       :
SYMBION POWER, LLC,                  :
                                     :
                      Petitioners,   :
          -against-                  :
                                     :   23-CV-1439 (VEC)
                                     :
ZOUZAR BOUKA, VIMA REAL ESTATE       :
S.A.R.L., *erroneously sued herein as VISION* :   OPINION & ORDER
*MADAGASCAR REAL ESTATE SARL*, and   :
VISION INDIAN OCEAN S.A.,            :
                                     :
                      Respondents.   :
---------------------------------------------------------------- X

VALERIE CAPRONI, United States District Judge:

Petitioners Symbion Power Holdings LLC and Symbion Power, LLC (collectively, "Symbion Power"), energy companies owned by nonparty Paul Hinks, filed this petition to compel arbitration of all claims against Petitioners that are within the scope of the parties' arbitration agreement and to enjoin Respondents' participation in the Madagascar criminal proceeding against Mr. Hinks. Not. of Removal Ex. 1 ("Pet."), Dkt. 1. On February 21, 2023, pursuant to section 205 of the Federal Arbitration Act, Respondents Zoukar Bouka, Vima Real Estate S.A.R.L. ("VIMA"), and Vision Indian Ocean S.A. ("VIO") removed this lawsuit from New York Supreme Court, New York County, and opposed the petition. Not. of Removal, Dkt. 1; Resp'ts. Opp., Dkt. 11. For the reasons discussed below, the petition to compel arbitration is DENIED, the motion to enjoin participation in the proceedings in Madagascar is DENIED, and the case is DISMISSED.

## BACKGROUND[1]

Respondent Bouka owns two corporations in Madagascar, VIO and VIMA, with which Symbion Power and Mr. Hinks signed a contract (the "Shareholders' Agreement") to renovate the Mandroseva Power Plant in Madagascar. Pet. ¶¶ 3–8, 22–24. In March 2020, Respondents filed a complaint in the Pôle Anti-Corruption ("PAC"), Madagascar's anti-corruption court, alleging that several Symbion Power employees, including Mr. Hinks, had committed corrupt acts.[2] *Id*. ¶¶ 59–61. In May 2020, nonparty Symbion Energy Holdings, Ltd. commenced arbitration against VIO pursuant to the arbitration provision contained in the Shareholders Agreement. *Id*. ¶¶ 13, 37, 53. That same month, Symbion Power joined the arbitration proceedings as a defendant in counterclaims brought by two other nonparties, ESAH Mandroseza Ltd. and Alpha Innovations Management, Ltd. *Id*. ¶¶ 20, 42, 54. On February 10, 2023, Symbion Power filed the instant suit to enjoin Respondents from participating in the anti-corruption proceedings in Madagascar and to compel arbitration of Respondents' anti-corruption claims.[3] *See* Pet.

---

[1]  Although not raised by the parties, recent case law suggests that there is some disagreement among courts in this Circuit concerning the appropriate standard to apply on a pre-discovery motion to compel arbitration. *Compare Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003) (applying a summary judgment standard) *with Aleksanian v. Uber Techs. Inc.*, 524 F. Supp. 3d 251, 258 (S.D.N.Y. 2021) (applying a motion to dismiss standard). Because the parties do not dispute the material facts relevant to the motion to compel arbitration, the Court need not resolve this apparent conflict for the purposes of this motion.

[2]  When the motion to compel arbitration was filed on February 10, 2023, Petitioners stated that the Pôle Anti-Corruption ("PAC") trial against Mr. Hinks was scheduled to begin on March 9, 2023. Not. of Removal Ex. 1 ("Pet."), Dkt. 1 ¶ 68. Petitioners have since informed the Court that the matter has been adjourned to May 4, 2023. Letter, Dkt. 19. For all of Petitioners' suggestions that time is of the essence, *see* Letter, Dkt. 19, they did not file this motion for nearly three years after the PAC proceedings had commenced.

[3]  Although anti-corruption proceedings in the PAC are criminal in nature, private parties may, as Respondents have, institute PAC proceedings as a civil party and seek damages for violations of Malagasy anti-corruption laws. Sanderson Decl. Ex. 13 ("First Banks Decl."), Dkt. 13 ¶¶ 6–8. As a civil party, Respondents may present evidence, make claims, and generally act as a private prosecutor. *See id.*; *see also* Resp'ts. Opp., Dkt. 11 at 8.

**DISCUSSION**

I.     **Legal Standard**

Before a federal court may assert subject-matter jurisdiction, it must first ascertain whether a petitioner has standing to sue. *See Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.À.R.L.*, 790 F.3d 411, 416–17 (2d Cir. 2015). To have standing, a petitioner must adequately allege: (1) a concrete, particularized, actual, or imminent injury-in-fact; (2) a causal connection between the injury and the conduct complained of such that the injury may be fairly traced to the defendant's challenged conduct; and (3) it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision from the Court. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992).

Courts have also imposed "prudential" limitations on standing.[4] The prudential standing doctrine, *inter alia*, bars "litigants from asserting the rights or legal interests of others in order to obtain relief from injury to themselves." *United States v. Suarez*, 791 F.3d 363, 366 (2d Cir. 2015) (cleaned up). "An interest that is merely a 'byproduct' of the suit itself cannot give rise to a cognizable injury in fact for Article III standing purposes." *Phoenix Light SF Ltd. v. U.S. Bank Nat'l Ass'n*, 612 F. Supp. 3d 263, 277 (S.D.N.Y. 2020) (quoting *Vt. Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 772–73 (2000)) (alteration omitted), *aff'd*, 2021 WL 4515256 (2d Cir. Oct. 4, 2021) (summary order).

II.     **Petitioners Do Not Have Standing to Compel Arbitration**

The litigation in Madagascar is a criminal proceeding against Mr. Hinks for allegedly misappropriating funds while he was CEO of Symbion Power. *See* Not. of Removal Ex. 11

---

[4]     Although courts have frequently framed the inquiry into the existence of third-party standing as "'prudential,' these concerns relate to the elements of Article III standing." *Montesa v. Schwartz*, 836 F.3d 176, 195 (2d Cir. 2016).

("Pets. Mem."), Dkt. 1 at 2; *In re Zouzar Bouka; Vision Indian Ocean S.A.*, No. 22-MC-92, 2022 WL 15527657, at *2 (S.D.N.Y. Oct. 28, 2022).  Symbion Power itself is not a party to the Madagascar proceedings, nor is Mr. Hinks a party to this lawsuit; Symbion Power purports to sue on Mr. Hinks' behalf.  It does not have standing to do so.

Symbion Power asserts that it has a legal right to compel arbitration of claims against Mr. Hinks that are part of the PAC proceedings.  Symbion Power argues that it is the real party in interest in the PAC proceeding because "VIMA's civil claims in the PAC arise out of the Shareholders' Agreement and seek damages against Mr. Hinks in his capacity as a manager of [Symbion Power Mandroseza S.AR.L. ('SPARL')] for payments made from SPARL to Petitioners."  Pets. Reply, Dkt. 14 at 3.  Companies, as distinct legal entities, do not, however, automatically have standing to assert the rights of their shareholders or officers.[5]  *See Keepers, Inc. v. City of Milford*, 807 F.3d 24, 40 (2d Cir. 2015) ("[B]ecause a 'corporation is a distinct legal entity' from its shareholders and officers, courts are not permitted to simply assume its standing to assert the rights of those parties." *Id*. (internal quotation omitted).); *see also SR Int'l Bus. Ins. Co., Ltd. v. World Trade Ctr. Props., LLC*, 375 F. Supp. 2d 238, 243 (S.D.N.Y. 2005) (noting that LLC's are distinct legal entities from member-owners).

Symbion Power, which bears the burden of demonstrating standing, has not plausibly established that it would directly suffer any injury as a result of an unfavorable outcome in the PAC proceedings.  *See Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168, 174 (2d. Cir. 2005) (Sotomayor, J.).  In the final paragraph of the Petition,

---

[5]     Petitioners have not argued that the Court should find that Symbion Power is legally identical to its members under the laws of Delaware, the state in which the Symbion Power entities are incorporated.  *See SR Int'l Bus. Ins. Co., Ltd. v. World Trade Ctr. Props., LLC*, 375 F. Supp. 2d 238, 243 (S.D.N.Y. 2005); Pet. ¶¶ 1–2.  Symbion Power has not suggested, for example, that "there is fraud or . . . the corporation is in fact a mere instrumentality or alter ego of its owner."  *NetJets Aviation, Inc. v. LHC Commc'ns, LLC*, 537 F.3d 168, 176 (2d Cir. 2008).

Symbion Power asserts that it has incurred reputational damage and unnecessary legal fees caused by the pendency of the PAC proceedings.  Pet. ¶ 79.  Petitioners allege no facts supporting their conclusory allegations of harm, nor do they attempt to explain how proceedings against an individual corporate officer caused them to suffer reputational damage or incur legal costs.  For example, Symbion Power does not assert that it is required to indemnify Mr. Hinks for any damages that might be levied against him or that the PAC may impose regulatory, civil, or criminal penalties against it.

Petitioners have failed to "plead enough facts to make it plausible that they did indeed suffer the sort of injury that would entitle them to relief." *Maddox v. Bank of N.Y. Mellon Tr. Co., N.A.*, 19 F.4th 58, 65–66 (2d Cir. 2021) (quoting *Harry v. Total Gas & Power N. Am., Inc.*, 889 F.3d 104, 110 (2d Cir. 2018)).  Rather, they have only offered "perfunctory allegation[s] . . . insufficient to plausibly allege constitutional standing." *Id.* at 66.  Furthermore, even if Petitioners' allegations were not conclusory, they fail to establish that any injury would be more than a mere "'byproduct' of the suit" against Mr. Hinks. *Phoenix Light SF Ltd.*, 612 F. Supp. 3d at 277.

Petitioners also do not have third-party standing to assert Mr. Hinks' right to enforce the arbitration agreement.  To establish third-party standing, petitioners must establish "(1) a close relationship to the injured party and (2) a barrier to the injured party's ability to assert its own interests." *Smith v. Hogan*, 794 F.3d 249, 255 (2d Cir. 2015) (cleaned up).  Even if the Court assumed that Symbion Power and Mr. Hinks "have a sufficiently close relationship to satisfy the first prong of this test," Symbion Power "has not shown, or even alleged, that [Mr. Hinks] would have any difficulty asserting [his] own interests."[6] *Keepers*, 807 F.3d at 41–42.  Accordingly,

---

[6] In a separate proceeding in the Southern District of New York, Respondents petitioned pursuant to 28 U.S.C. § 1782 for discovery related to the Malagasy proceedings.  *See In re Bouka*, 22-MC-92, 2023 WL 1490378

Petitioners have not provided the Court with "any reason . . . to lift the prudential bar against asserting the rights of others." *Id.* at 42.

In short, Petitioners lack standing to bring this action.

### III.  Petitioners Have Not Established Entitlement to an Anti-Suit Injunction

Putting aside whether Petitioners have standing, they also have not satisfied the requirements for an anti-suit injunction. "In order to obtain an anti-foreign-suit injunction, the moving party must first make two threshold showings: first, that the parties in both suits are the same, and second, that the resolution of the case before the enjoining court would be dispositive of the enjoined action." *MasterCard Int'l Inc. v. Argencard Sociedad Anonima*, No. 01-CV-3027, 2002 WL 432379, at *10 (S.D.N.Y. Mar. 20, 2002). In this case, Petitioners have demonstrated neither.

The cases cited by Petitioners for the proposition that courts may grant anti-suit injunctions brought by a petitioner who is not party to the suit it seeks to enjoin are inapposite. As an initial matter, none of those cases involved criminal proceedings against an individual corporate officer or owner; instead, they focused on the relationships among affiliated corporations that were parties to different suits. *See Motorola Credit Corp. v. Uzan*, No. 02-CV-666, 2003 WL 56998, at *2 (S.D.N.Y. Jan. 7, 2003).

In *Paramedics Electromedicina Comercial, Ltda v. GE Medical Systems Information Technologies, Inc.*, the party petitioning for an anti-suit injunction was also party to the foreign litigation it sought to enjoin; its parent company, unnamed in the U.S. suit, was a party in the foreign litigation chiefly because of its affiliation with the petitioner. 369 F.3d 645, 652 (2d Cir.

---

(S.D.N.Y. Feb. 3, 2023). The Court notes that Mr. Hinks was able to assert his legal rights in those proceedings; he intervened and has made filings in that case as recently as approximately one month before the instant petition was filed. *See* Mot. to Intervene, *In re Bouka*, No. 22-MC-92, Dkt. 11; Letter, *In re Bouka*, No. 22-MC-92, Dkt. 65.

2004). There is no claim that Mr. Hinks was named in the Malagasy proceedings because he is an owner of Symbion Power. The complaint filed in the PAC makes clear that the proceeding was brought against Mr. Hinks pursuant to criminal statutes that make certain persons, including managers of LLCs, liable if they commit corrupt acts; the proceeding was not brought because of his affiliation with an LLC that may have been part of the corruption scheme.[7] *See* Sanderson Decl. Ex. 12 ("PAC Compl."), Dkt. 13.

In *Storm LLC v. Telenor Mobile Communications AS*, No. 06-CV-13157, 2006 WL 3735657 (S.D.N.Y. Dec. 15, 2006), the respondent sought to enjoin collusive foreign litigation between the petitioner and its alter ego. The fact that the respondent in *Storm* was not party to the foreign litigation did not preclude the issuance of an anti-suit injunction because the petitioner's collusion had precluded the respondent from intervening in the foreign action, even though it was bound by the judgment in that proceeding. *See id*. at *5, *9 n.5. Unlike in *Storm*, Petitioners do not allege that they were excluded from the PAC proceeding because of collusion by Respondents nor do they allege that they would be bound by any foreign judgment rendered by the PAC.

Furthermore, both *Paramedics* and *Storm* were cases where the party opposing arbitration "sought to sidestep arbitration" by commencing foreign proceedings after arbitration had already begun. *Cybernaut Cap. Mgmt. Ltd. v. Partners Grp. Access Secondary 2008, L.P.*, No. 13-CV-5380, 2013 WL 4413754, at *5 (S.D.N.Y. Aug. 7, 2013) (citing *Paramedics*, 369 F.3d at 649;

---

[7] As evidence of the closeness of the relationship between Symbion Power's claims in the instant suit and the PAC proceedings against Mr. Hinks, Petitioners point to the fact that both Mr. Hinks and Symbion Power signed the contract containing the arbitration agreement at issue. *See* Pets. Reply, Dkt. 14 at 3. The Second Circuit has made clear, however, that, in this context, the fact that a litigant may have claims against two different entities which "arise out of the same facts, circumstances, and relationships . . . is neither here nor there." *Paramedics Electromedicina Comercial, Ltda v. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645, 652 (2d Cir. 2004). That Petitioners and Mr. Hinks were signatories to the same contract containing the arbitration agreement that Petitioners assert encompasses the claims raised against Mr. Hinks in the Malagasy proceedings does not, of course, mean that Petitioners and Mr. Hinks are the same entity.

*Storm*, 2006 WL 3736657, at *2). Petitioners, in contrast, did not become party to the arbitration proceedings until after the PAC suit had begun, and even then, only joined the arbitration because they were named as defendants to counterclaims by nonparties. *See* Pet. ¶¶ 53–54, 59.

Both *Storm* and *Paramedics* relied on *MasterCard International, Inc. v. Argencard Sociedad Anonima*, No. 01-CV-3027, 2002 WL 432379 (S.D.N.Y. Mar. 20, 2002), which found that the parties in the foreign proceeding were sufficiently similar to the respondents in the anti-suit litigation to satisfy the requirement of an identity of parties, even though the foreign proceedings included respondent's controlling shareholder. The *MasterCard* court did so because the shareholder was "not a necessary party" to the foreign proceeding, and the "primary parties" in both actions were the same. *Id.* at *10; *see also Paramedics*, 369 F.3d at 652–53; *Storm*, 2006 WL 3735657, at *6. Mr. Hinks, in contrast, is obviously a necessary party to a foreign criminal proceeding against him, and the primary parties in this lawsuit are not the same as the primary parties to the PAC proceedings. In short, the only party who could satisfy the requirement that the parties be identical in order to seek an injunction against Respondents' participation in the Malagasy anti-corruption proceedings is Mr. Hinks, who has chosen not to do so.

Nor has Symbion Power established that the conclusion of arbitration of Respondents' claims would be dispositive of the PAC proceedings. Courts may only grant an anti-suit injunction if a "ruling on the arbitrability is dispositive of the [foreign] litigation." *Paramedics*, 369 F.3d at 652 (citing *China Trade & Dev. Corp. v. M.V. Choong Yong*, 837 F.2d 33, 35 (2d Cir. 1987)). Symbion Power acknowledges that, even if the Court were to require Respondents to arbitrate their claims against Mr. Hinks and to stop participating in the proceedings in Madagascar, the PAC proceedings could still continue as "the Malagasy State Prosecutor and

8

PAC remain free to prosecute the defendants . . . ." Pets. Reply at 10; *see also WTA Tour, Inc. v. Super Slam Ltd.*, 339 F. Supp. 3d 390, 405 (S.D.N.Y. 2018) (noting that a ruling on arbitrability does not dispose of foreign litigation that involves different entities who may pursue separate relief).

Because the Court finds that Petitioners lack standing and have not satisfied either of the requirements for this Court to consider its requested injunction, it will not examine the merits of Petitioners' claim. The Court is highly skeptical, however, of Petitioners' assertion that the Court may enjoin foreign criminal proceedings and compel arbitration of the claims asserted therein.

The Federal Arbitration Act rests on "the 'fundamental principle that arbitration is a matter of contract." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (quoting *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 67 (2010)). Courts are reluctant to impute to contracting parties the intent to arbitrate lawsuits asserting the public interest in compliance with the law, even where the relief sought is purely monetary, because such claims fall outside the bounds of the ordinary contractual relationship. *See, e.g.*, *United States ex rel. Welch v. My Left Foot Child.'s Therapy, LLC*, 871 F.3d 791, 799–800 (9th Cir. 2017) (holding that an arbitration agreement did not encompass a *qui tam* suit brought pursuant to the False Claims Act). Principles of comity further counsel against reading an arbitration agreement to encompass such suits brought with the assistance of a foreign government. *See, e.g.*, *Munaf v. Geren*, 553 U.S. 674, 699 (2008) (cautioning courts against "interven[ing] in an ongoing foreign criminal proceeding").

## CONCLUSION

For the foregoing reasons, Petitioners' motion to compel arbitration and to enjoin the Respondents from participating in the anti-corruption proceedings in Madagascar is DENIED. As that is the only relief sought in this matter, the case is DISMISSED without prejudice.[8]  The Clerk of Court is respectfully directed to terminate all open motions and to CLOSE the case.

**SO ORDERED.**

Date:  May 4, 2023
       New York, NY

_____
VALERIE CAPRONI
**United States District Judge**

---

[8]  In some circumstances, Federal Rule of Civil Procedure 17(a)(3) allows a petitioner to remedy standing defects caused by the absence of a real party in interest by requiring the Court to provide "reasonable time" for the "real party in interest to ratify, join, or be substituted into the action." However, "where courts in this Circuit have used Rule 17(a)(3) to remedy defects in standing, they have generally done so where the plaintiff clearly had standing on another claim that it brought." *Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.À.R.L.*, 790 F.3d 411, 423 (2d Cir. 2015) (cleaned up).  Because Petitioners brought only a single claim regarding Respondents' alleged breach of the arbitration agreement in instituting anti-corruption proceedings against Mr. Hinks, they did not have standing to bring any claim in this matter.  Accordingly, the Court lacks subject-matter jurisdiction over this matter and must dismiss it without prejudice.  *See Bank v. U.S. Dep't of Health & Hum. Servs.*, 708 F. App'x 43, 44–45 (2d Cir. 2018) (summary order).